

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-5-2007

# USA v. Voelker

Precedential or Non-Precedential: Precedential

Docket No. 05-2858

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Voelker" (2007). *2007 Decisions.* Paper 852.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/852

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 05-2858

UNITED STATES OF AMERICA

v.

DANIEL VOELKER,

Appellant

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 05-cr-00133)
District Judge: Hon. Alan N. Bloch

Argued: July 13, 2006

Before: SLOVITER, McKEE and RENDELL,
Circuit Judges

(Opinion filed June 5, 2007)

Karen S. Gerlach
Renee Pietropaolo (Argued)
Office of Federal Public Defender
1001 Liberty Avenue
1450 Liberty Center
Pittsburgh, PA 15222
Attorney for Appellant

Robert L. Eberhardt (Argued)
Laura S. Irwin
Office of United States Attorney
700 Grant Street Suite 400
Pittsburgh, PA 15219
Attorney for Appellee

OPINION

McKEE, Circuit Judge.

Daniel Voelker was sentenced to seventy-one months in prison followed by a lifetime term of supervised release after he pled guilty to possessing child pornography in violation of 18 U.S.C. § 2252(a)(2). He appeals only the special conditions that the court imposed on the term of supervised release. For the reasons that follow, we will vacate those conditions and remand for resentencing consistent with this opinion.

## I. BACKGROUND

During an FBI investigation into the online activity of Wyndell Williams, agents monitored a computer "chat" between Williams and Daniel Voelker. During this online communication, Voelker, a thirty-five year-old Pennsylvania

2

resident, briefly exposed the buttocks of his three year-old daughter over a webcam that was connected to his computer.

When the FBI subsequently confronted Voelker with this information, he acknowledged downloading child pornography onto his computer, and he directed agents to computer discs where the files were stored. He also admitted to partially exposing his daughter over his webcam, but he insisted that statements he had made about sexual contact with minors or offering his daughter for sex were merely gratuitous statements in the nature of "role-playing." He claimed that he never intended to follow through on any of those statements but admitted that he engaged in such online "role-playing" on a daily basis. Agents subsequently searched Voelker's home pursuant to a warrant and seized computer files containing child pornography.

Thereafter, Voelker waived indictment and pled guilty to receipt of material depicting the sexual exploitation of a minor in violation of 18 U.S.C. § 2252(a)(2). Under the terms of the

3

plea agreement, Voelker also accepted responsibility for a second count of possession of material depicting the sexual exploitation of a minor in violation of 18 U.S.C. § 2252(a)(4)(B), but that count was subsequently dismissed on motion of the government.

As noted at the outset, the District Court sentenced Voelker to seventy-one months incarceration followed by a lifetime term of supervised release pursuant to 18 U.S.C. § 3583(k). The lifetime term of supervised release and three conditions the court imposed are the subject of this appeal. As summarized by the government, the conditions were as follows:

> 1. The defendant is prohibited from accessing any computer equipment or any "on-line" computer service at any location, including employment or education. This includes, but is not limited to, any internet service provider, bulletin board system, or any other public or private computer network;

> 2. The defendant shall not possess any materials, including pictures, photographs, books, writings, drawings, videos or video games depicting and/or describing sexually explicit conduct as defined at Title 18, United States Code, Section 2256(2);

4

and

> 3. The defendant shall not associate with children under the age of 18 except in the presence of a responsible adult who is aware of the defendant's background and current offense and who has been approved by the probation officer.

This appeal followed.[1]

## II. DISCUSSION.

A sentencing judge is given wide discretion in imposing a sentence. However, the discretion is not absolute. It must be exercised within the parameters of 18 U.S.C. § 3583. *Unites States v. Crandon*, 173 F.3d 122, 127 (3d Cir. 1999). Section 3583(d) requires a sentencing court to impose certain statutorily

---

[1] We review conditions of supervised release for abuse of discretion. *United States v. Crandon*, 173 F.3d 122, 127 (3d Cir. 1999). However, if the condition was imposed without objection, we review only for plain error. *United States v. Warren*, 186 F.3d 358, 362 (3d Cir. 1999); *cf.* Fed. R. Crim. P. 52(b).

Voelker objected to the first two conditions (prohibition of computers and internet access, and prohibition of possession of "sexually explicit" materials), but he did not object to the third condition.

mandated conditions as part of any term of supervised release. These mandatory conditions include such generally applicable conditions as attendance at court approved rehabilitation programs, supplying a DNA sample, and testing for controlled substances. 18 U.S.C. § 3583(d). Section 3583(d) also allows the court to impose more specific conditions of supervised release tailored to the specific offense and offender. However, any such condition must be "reasonably related" to the factors set forth in 18 U.S.C. § 3553(a). Those factors include: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and] (2) the need for the sentence imposed . . . (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a). Any such condition must impose "no greater deprivation of liberty than is reasonably necessary" to deter

6

future criminal conduct, protect the public, and rehabilitate the defendant. 18 U.S.C. § 3583(d)(2); *see United States v. Pruden*, 398 F.3d 241, 248 (3d Cir. 2005) (noting that the considerations included in § 3583 by the incorporation of § 3553 "are fairly broad, but they do impose a real restriction on the district court's freedom to impose conditions on supervised release.").

Conditions of supervised release must be supported by some evidence that the condition imposed is tangibly related to the circumstances of the offense, the history of the defendant, the need for general deterrence, or similar concerns. *Pruden*, 398 F.3d at 248-49. "[A] condition with no basis in the record, or with only the most tenuous basis, will inevitably violate § 3583(d)(2)'s command that such conditions involve no greater deprivation of liberty than is reasonably necessary." *Id*. at 249 (internal quotations omitted). Accordingly, "courts of appeals have consistently required district courts to set forth factual findings to justify special probation conditions." *United States*

7

*v. Warren*, 186 F.3d 358, 366 (3d Cir. 1999).[2]

Where a sentencing court fails to adequately explain its reasons for imposing a condition of supervised release or the condition's relationship to the applicable sentencing factors, we may nevertheless affirm the condition if we can "ascertain any viable basis for the . . . restriction in the record before the District Court . . . on our own." *See id.*, 186 F.3d at 367.

Although Voelker is challenging the lifetime term of his supervised release as well as the three special conditions of supervised release set forth above, we need not separately address his challenge to the term of his supervised release. Our discussion of the propriety of the conditions imposed on that term applies to duration of the term with equal force. Accordingly, we will focus on the propriety of the conditions of

---

[2] Although *Warren* concerns conditions of probation rather than supervised release, the distinction is without a difference for purposes of our inquiry, and the analysis there is relevant to our analysis here. *See United States v. Evans*, 155 F.3d 245, 250-51 (3d Cir. 1998) (holding that the rules guiding imposition of special conditions are identical for probation and supervised release.*).*

the supervised release.

## A. PROHIBITION OF COMPUTER EQUIPMENT AND THE INTERNET

Voelker contends that an absolute lifetime ban on using computers and computer equipment as well as accessing the internet, with no exception for employment or education, involves a greater deprivation of liberty than is reasonably necessary and is not reasonably related to the factors set forth in 18 U.S.C. § 3583. We agree.

The District Court did not explain its reasons for imposing such an unprecedented and sweeping lifetime restriction. We therefore have no way of determining if the court undertook the "careful and sensitive individualized assessment [that] is always required before such a ban is imposed." *United States v. Johnson*, 446 F.3d 272, 282 n.2 (2d Cir. 2006).

Given this record, we assume that the court imposed the ban because computers and the internet were inextricably

involved in his criminal conduct. Nevertheless, given the extraordinary breadth of this condition and the absence of any explanation, we are at a loss to understand how the District Court could have considered the factors contained in § 3553(a) and concluded that this condition is narrowly tailored to impose no greater restriction than necessary. The condition is the antithesis of a "narrowly tailored" sanction. The lifetime ban on all computer equipment and the internet is the functional equivalent of prohibiting a defendant who pleads guilty to possession of magazines containing child pornography from ever possessing any books or magazines of any type during the remainder of his/her life.

The ubiquitous presence of the internet and the all-encompassing nature of the information it contains are too obvious to require extensive citation or discussion. Even a casual user of the "information highway" will realize that it instantly provides near universal access to newspapers such as the New York Times; the Wall Street Journal and the

10

Washington Post; to popular magazines such as Newsweek and Time, such respected reference materials as the Encyclopedia Britannica and World Book Encyclopedia, and much of the world's literature.[3]

We realize, of course, that the anonymous access to all kinds of information opens the door to all kinds of abuse. This case clearly illustrates the potential for abuse and victimization that is also endemic in the internet.[4] Here, the victims of that

---

[3] For example, "Project Gutenberg" is an online collection of over 20,000 works of literature in over fifty languages that are all in the public domain and available for free download and reading to anyone with access to a computer. *See* Project Gutenberg, http://www.gutenberg.org/catalog/ (last visited March 19, 2007). Thousands of these works are also available as "ebooks" that can be downloaded and stored for subsequent leisure reading on various kinds of computer devices from the traditional desktop to handheld personal organizers. *See id.*

[4] The Internet is home to countless virtual communities and chat-rooms where "[v]irtually any type of sexual fantasy may be witnessed (or participated in)." Michael W. Sheetz, *CyberPredators: Police Internet Investigations Under Florida Statute 847.0135*, 54 U. MIAMI L. REV. 405, 426-47 (2000). For an in-depth study of such virtual communities, see SHERRY TURKLE, LIFE ON THE SCREEN: IDENTITY IN THE AGE OF THE INTERNET (1995).

abuse are children who tragically become involved in the world of online child pornography. This was obviously the District Court's concern and focus in imposing this condition.

Nevertheless, we have never approved such an all-encompassing, severe, and permanent restriction, and nothing on this record inspires confidence in the propriety of doing so now. The court in *Crandon* imposed the most severe restriction on computer and internet use that we have thus far upheld. 173 F.3d at 128. There, Crandon, a thirty-nine year-old New Jersey resident, met a fourteen year-old girl from Minnesota online. *Id.* at 125. Crandon communicated with the girl over the internet for several months and eventually traveled to Minnesota to meet her. *Id.* During his visit to Minnesota, the two had sexual relations, and Crandon took sexually explicit photos of her. *Id.*

His activity was subsequently discovered, and he eventually pled guilty to one count of receiving child pornography in violation of 18 U.S.C. § 2252(a)(2). *Id.* He was sentenced to seventy-eight months in prison followed by a three-

year term of supervised release. *Id.* One of the conditions of supervised release directed that Crandon not "possess, procure, purchase or otherwise obtain access to any form of computer network, bulletin board, Internet, or exchange format involving computers unless specifically approved by the United States Probation Office." *Id.* We upheld that condition because Crandon had used the internet to develop and exploit the relationship. *Id.* at 127-28. Thus, the restriction on internet access was reasonably related to "the dual aims of deterring him from recidivism and protecting the public." *Id.* The restriction was narrowly tailored and consistent with Crandon's criminal conduct even though it may have jeopardized his employment and impacted his First Amendment freedoms. *Id.* at 128.

The government argues that this case "warrants the kind of special supervisory condition [we] allowed in *Crandon*" because it is similar to *Crandon* "in its essentials." Appellee's Br. at 12, 14. That is simply not true.

The government's reliance on *Crandon* ignores the

13

glaringly obvious difference between the duration of Crandon's conditions and the duration of Voelker's conditions. Crandon's restrictions remained in place for three years; Voelker's restrictions will last as long as he does. Furthermore, Crandon used computers and the internet to actually seek out, and then communicate with, his victim. Crandon also traveled across the country to have sex with the minor he met and seduced online. Still, Crandon was allowed to continue using stand-alone computers and computer equipment, and he retained the right to use the internet with the consent of the Probation Office. Voelker is not afforded either of those options. Although Voelker's conduct was reprehensible, he did not use his computer equipment to seek out minors nor did he attempt to set up any meetings with minors over the internet as Crandon did. Since Voelker's conduct was not nearly as predatory as Crandon's, the latter actually counsels against the much more

intrusive lifetime restriction on Voelker.[5]

Moreover, 18 U.S.C. § 3553(a) requires that courts consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. §3553(a)(6). At Voelker's sentencing, the government asked the court to impose a 71 month sentence of imprisonment followed by lifetime supervision because that was the sentence imposed on Wyndell Williams, the target the FBI was investigating when Voelker's activity was discovered. Supp. App.116-17. However, there was "considerable evidence that Williams attempted to actually engage in sexual acts with minors." His behavior was therefore much more analogous to Crandon's conduct than to Voelker's.

The District Court could clearly have imposed some limitations on Voelker's access to computers and the internet.

---

[5] Although we do not know Crandon's criminal history, we do know that Voelker has no prior criminal record, and the offense of which he was convicted is the same as that of Crandon.

15

However, it is equally clear that any such restriction had to be narrowly tailored and consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a). *See United States v. Booker,* 543 U.S. 220, 233-34 (2005). The conditions imposed on Voelker fall woefully short of that requirement. *See United States v. Peterson*, 248 F.3d 79, 83 (2d Cir. 2001) (noting that the mere use of telephones to commit an offense does not justify an absolute ban on using telephones). The restrictions here bear no resemblance to the narrowly tailored sanctions that are required by § 3553(a). A brief discussion of our decision in *United States v. Freeman*, 316 F.3d 386 (3d Cir. 2003), illustrates the kind of tailoring the court should have considered.

Freeman was an admitted pedophile whose predatory behavior went as far as seeking out babysitting jobs in order to photograph nude boys. *Id*. at 388. Freeman also admitted to "molesting numerous young boys," although the molestations had occurred more than fifteen years before the possession of child pornography charges that were then before the court. *Id.*

16

In addition, two convictions for sexual misconduct were not included in his criminal history "because of their age." *Id.* Freeman also pled guilty to receipt and possession of child pornography in violation of 18 U.S.C. § 2252(a)(2) and (4)(B). *Id.* at 387-88. In imposing sentence, the court departed upward from Criminal History Category I to Category III based upon its conclusion that Category I under-represented Freeman's record and his likelihood of recidivism. *Id.* at 388. The court imposed a sentence of seventy months incarceration followed by five years of supervised release. *Id.* at 389. During the term of supervised release, Freeman was "prohibited from having any computer equipment in [his] . . . residence." *Id.* In addition, he could "not possess or use a computer with access to any on-line computer service . . . without the written approval of the Probation Officer." *Id.* at 389-90. To ensure compliance, Freeman also had to "consent to periodic, unannounced examinations of [his] residence and possessions, to determine if [he was] in possession of computer equipment or any child

17

pornography." *Id*., at 390 (brackets around "his" in original).

Freeman appealed the condition of supervised release that prohibited "using or possessing a computer without the permission of his probation officer." *Id*. In explaining why that condition was overly broad, we declared: "There is no need to cut off . . . access to email or benign internet usage when a more focused restriction, limited to pornography sites and images, can be enforced by unannounced inspections of material stored on [the defendant's] hard drive or removable disks." *Id*. at 392. We also explained that "a special condition forbidding him from possessing any computer . . . or using any on-line computer service without the written approval of the probation officer is overly broad; it involves a greater deprivation of liberty than is reasonably necessary to deter future criminal conduct and to protect the public." *Id*. at 391-92.[6] Yet, the five year restriction we struck down in *Freeman* pales in comparison

---

[6] Although we concluded that the conditions were too restrictive, we left open the possibility that such conditions could be imposed in the future if Freeman did not comply with more limited conditions. *Freeman*, 316 F.3d at 392.

18

to the lifetime restrictions imposed here.[7]

In *Freeman*, we distinguished *Crandon* by emphasizing Crandon's use of the internet to contact and exploit victims. *Id.* at 392. In contrast, there was "nothing . . . to suggest that Freeman [had] used the internet to contact young children." *Id*. Accordingly, Crandon's computer usage was far more problematic and "more difficult to trace than simply using the internet to view pornographic web sites." *Id.* Periodic inspection of Crandon's computer equipment would not have addressed concerns about future illegal conduct nor adequately

---

[7] During oral argument, the government indicated that the breadth of the restriction here was partly due to the fact that the probation office lacked sufficient funding or personnel to monitor Voelker's computer use. However, there is nothing on the record to suggest that was a consideration, and the District Court never relied upon any such concern to justify the absolute prohibition it imposed. Moreover, even if the court had considered cost, we would be reluctant to agree that such dramatic limitations on First Amendment freedoms can readily be justified by the cost of affording fundamental liberties. This is particularly true given the court's failure to explore the alternatives we suggested in *Freeman,* including periodic inspection of the defendant's hard drive and other storage media.

protected the public.  The conduct here is clearly more akin to

*Freeman* than *Crandon*.

We realize that attempts to tailor conditions of supervised

release to the specifics of an offense involving computers and

the internet are particularly difficult given the extent to which

computers have become part of daily life and commerce.[8]  That

8 "Computers and Internet access have become virtually indispensable in the modern world," *Peterson*, 248 F.3d at 83, and their permeation of all aspects of our lives is increasing exponentially. "[L]ocal governments are making [wireless] Internet part of the public infrastructure (akin to roads and sewer lines)."  Robert MacMillan, *Life, Liberty and Free WiFi*, WASHINGTONPOST.COM,  May 2, 2005, *available at* LEXIS, News Library.

Although it is impossible to remain unaware of the exponential growth of computers or our dependence on them, it is still difficult to fully appreciate the extent to which they impact our daily lives  because it is not always apparent. For example, "[c]ars today might have as many as 50 microprocessors . . . ." Karim Nice, *How Car Computers Work*, http://computer.howstuffworks.com/car-computer.htm    (last viewed on December 28, 2006).  "All cars manufactured today contain at least one computer." *What does the computer in a car do?*,    http://auto.howstuffworks.com/question113.htm    (last visited Dec. 28, 2006).  Computers control automatic braking systems and monitor everything from emissions to air and engine temperature.  *Id.*

Thus, literal compliance with the court's ban on accessing computer equipment would have impacted Voelker's ability to drive a car as well as his ability to use such everyday

does not, however, justify the kind of lifetime cybernetic banishment that was imposed here. *See United States v. Crume*, 422 F.3d 728, 733 (8th Cir. 2005) (the record did not support a broad ban on computers and the internet, which are "an important medium of communication, commerce, and information-gathering"); *United States v. Holm*, 326 F.3d 872, 878 (7th Cir. 2003) (monitored access to the internet ensured that the offender would not use it for illegal purposes while recognizing the "need to allow him to function in the modern world").

Although supervised release is obviously not a custodial sentence, it is nonetheless hard to imagine how Voelker could function in modern society given this lifetime ban on all forms of computer access and use. The court did not pronounce an

---

resources as ATM machines and grocery store scanners. Microprocessors that can easily be considered computers or computer equipment, are even found in such every day appliances as washing machines, television sets, microwave ovens and video cassette recorders. *See* http://www.atarimagazines.com/compute/issue40/smart_products.php (last viewed May 7, 2007).

unconstitutional banishment as such, but the conditions that were imposed have analogous consequences that the District Court did not justify and apparently did not consider. *See United States v. Abushaar,* 761 F.2d 954, 961 (3d Cir. 1985) (requiring that probation time be served outside the country was "impermissible [in part] because it was completely unrelated to any purpose to rehabilitate . . .."").

Our research has failed to disclose any court of appeals decision affirming a lifetime ban on computers or a blanket ban on "computer equipment." Only the Court of Appeals for the Fifth Circuit has approved a complete ban on the use of computers in a precedential opinion, and that was limited to three years. *See United States v. Paul*, 274 F.3d 155, 170 (5th Cir. 2001).[9] Unlike Voelker, the defendant there "used the Internet to initiate and facilitate a pattern of criminal conduct

---

[9] The Court of Appeals for the Fifth Circuit approved a complete ban on the use of computers in *United States v. McDermott*, 133 Fed. Appx. 952, 954 (5th Cir. 2005). However, that was in a non-precedential opinion and the review was for plain error. *Id.* at 953.

22

and victimization." *Id.* at 169 (internal quotation marks omitted). Paul even used online resources and bulletin boards to inform others about websites featuring child pornography. *Id.* at 168. He also told others "how to 'scout' single, dysfunctional parents and gain access to their children." *Id.* His computer usage included soliciting individuals for trips to "visit" children in Mexico. *Id.* Thus, his conduct was exponentially more dangerous than Voelker's. Paul was a predator who roamed the internet in search of prey while telling like minded predators how to prey upon the unsuspecting victims on the internet.

Voelker's use of computers and the internet does not pose the kind of unbridled threat to the unsuspecting public that either Paul or Crandon posed. The breadth and duration of the prohibition in Voelker's case is particularly unfathomable because Voelker was employed as a respiratory therapist from 1996 until his arrest. It is hard to imagine how he could remain employed in that or any similar occupation absent access to computer equipment. In fact, he claims that "[s]uch employment

23

in a hospital necessarily entails access to and the use of computers and computer equipment for record keeping [and] patient care." Appellant's Br. at 23.[10] The government does not attempt to rebut that representation, and few who have walked down the halls of any modern hospital would question it.

The Sentencing Guidelines advise that a District Court should only impose an occupational restriction when there is a "reasonably direct relationship . . . between the defendant's occupation . . . and the conduct relevant to the offense of conviction; and imposition of such a restriction is reasonably necessary to protect the public because there is reason to believe that, absent such restriction, the defendant will continue to engage in [similar] unlawful conduct." U.S.S.G. § 5F1.5(a)

---

[10] According to Voelker, computers are incorporated into such common lifesaving equipment as resuscitators and ventilators. Appellant's Br. At 23. Although a District Court need not impose a sentence that allows for continued employment, it was well within the sentencing court's discretion to consider the impact of a given sentence on a family unit and impose a lesser sentence even under the mandatory guidelines regime that preceded *United States v. Booker. See United States v. Dominguez*, 296 F.3d 192, 194 (3d. Cir. 2002).

(implementing occupational restrictions authorized by 18 U.S.C. § 3583(d) for supervised release). Moreover, even "[i]f a district court makes both determinations and imposes an occupational . . . restriction, it must be for 'the minimum time and to the minimum extent necessary to protect the public.'" *United States v. Smith*, 445 F.3d 713, 717 (3d Cir. 2006) (quoting U.S.S.G. § 5F1.5(b)).

The government does not claim that Voelker used computers to download pornography at work, and the record does not suggest that he did. Yet, the court imposed a prohibition that prevents him from resuming his previous vocation and erects a seemingly insurmountable barrier to future training to secure other employment. It precludes him from taking online courses and could easily interfere with more traditional instruction, as those classes may rely on email and online reference materials.

This does not, of course, mean that the district court may not impose some kind of restriction on Voelker's computer use

and internet access on remand. However, any such restrictions must be consistent with 18 U.S.C. § 3583(d)(2). They must be appropriately tailored and impose no greater restriction on Voelker's liberty than necessary. *See* 18 U.S.C. § 3583(d). In addition, the court must provide a sufficiently detailed explanation of any such restriction to allow for meaningful appellate review. *See United States v. Cooper,* 437 F.3d 324, 328 (3d Cir. 2006). The court's justification should consider the ubiquitous nature of the internet as a medium of information, commerce, and communication as well as the availability of filtering software that could allow Voelker's internet activity to be monitored and/or restricted. *See United States v. White*, 244 F.3d 1199, 1206 (10th Cir. 2001). As we discuss more fully below, the court must also consider the First Amendment implications of any such restriction. The ban the court imposed here "sweeps more broadly and imposes a greater deprivation on [Voelker's] liberty than is necessary." *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003).

26

## B. PROHIBITION ON SEXUALLY EXPLICIT MATERIALS

Voelker is also prohibited from possessing any textual descriptions or visual descriptions of "sexually explicit conduct," as defined by 18 U.S.C.§ 2256(2)(A).  This means "actual or simulated (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person." *Id.*

Voelker argues that this condition violates the First Amendment and, like the ban on computer and internet access, it also involves a greater deprivation of liberty than is reasonably necessary to deter future criminal conduct and protect the public.

Although the court did not provide us with an explanation for this condition either, the conduct the defendant admitted to offers some support for this restriction. When the District Court

27

does not articulate its reasons for imposing a given sentence, "'we may . . . examine the record and perform the required balancing ourselves.'" *United States v. Johnson*, 388 F.3d 96, 101 (3d Cir. 2004) (quoting *Becker v. ARCO Chemical Co.*, 207 F.3d 176, 181 (3d Cir. 2000)).[11]

It is apparent from the charges Voelker pled guilty to, as well as the conduct he admitted, that the court thought this condition was consistent with the nature of Voelker's offense. Although "the District Court could, perfectly consonant with the Constitution, restrict [an offender's] access to sexually oriented materials," such a restriction must have a nexus to the goals of supervised release. *United States v. Loy*, 237 F.3d 251, 267 (3d Cir. 2001) ("*Loy II*"). We are unable to find any such nexus here, and the District Court's failure to explain its reasons makes our review all the more difficult.[12] We assume the court believed

---

[11] Although in *Johnson* we were addressing Federal Rule of Evidence 609(b), this statement is equally applicable here.

[12] The government asserts, without explanation, that this condition "does reasonably relate to the nature and circumstances of the Appellant's offense." Appellee's Br. 19.

a lifetime ban on possessing "sexually explicit materials" would further his rehabilitation and reduce the chances of recidivism.

At first blush, this restriction appears to be sufficiently related to Voelker's offense to survive his challenge. Although a ban on accessing sexually explicit material involving children would certainly be reasonable, there are First Amendment implications for a ban that extends to explicit material involving adults. We assume that the condition was specifically intended to include explicit material involving adults because such material cannot *legally* involve children, and the statutorily mandated conditions of supervised release require Voelker to comply with those laws. Those conditions prohibit future possession of child pornography. However, nothing on this

---

The government points us, presumably for clarification, to *United States v. Bee*, where a similar condition was upheld. 162 F.3d 1232, 1235 (9th Cir. 1998). It is not entirely clear why the court in *Bee* felt that restricting sexually explicit materials "was necessary to address Bee's problems with deviant sexual behavior triggered by his abuse of alcohol." *Id.* In any event, that case involved physical abuse of a six year-old girl. *Id.* at 1234. The supervised release condition was limited to three years and narrower in scope than the restriction the court imposed here. *Id.*

record suggests that sexually explicit material involving only adults contributed in any way to Voelker's offense, nor is there any reason to believe that viewing such material would cause Voelker to reoffend.[13]

Even assuming this restriction has some unexplained rehabilitative, deterrent or penological purpose, given our discussion in *United States v. Loy*, 191 F.3d 360 (3d Cir. 1999) (*"Loy I"*),[14] it should have been apparent that any such purpose

---

[13] Compare *United States v. Simmons*, 343 F.3d 72 (2d Cir. 2003), where Simmons was convicted of transporting a minor in foreign commerce for the purpose of engaging in illegal sexual conduct and of producing sexually explicit videotapes. *Id.* at 74. Simmons' sentence involved a three year term of supervised release, which included a condition prohibiting him from possessing or viewing "pornographic material." *Id.* at 74-75. In upholding the condition, the court explained that since Simmons "often videotaped his sexual attacks upon his victims, it was reasonable for [the District Court] to conclude that there was a connection between Simmons' viewing and possessing sexually explicit material and his criminal behavior." *Id.* at 82.

[14] We vacated a sentence in *Loy I* because of the conditions of supervised release and remanded for resentencing. In *Loy II*, we vacated the sentence that was imposed on remand and remanded the case once again. Since both *Loy I*, and *Loy II* are relevant to the issues here, we will collectively refer to them as "*Loy*," where appropriate.

30

had to be balanced against the serious First Amendment concerns endemic in such a restriction.[15]  *See Loy II.*  The conditions imposed here are particularly troublesome when viewed against the backdrop of our discussion in *Loy*.  As we discuss below, these conditions of supervised release are almost identical to the conditions we vacated there.  Moreover, these conditions were imposed by the same sentencing judge.

Loy entered a guilty plea to knowingly receiving child pornography through the mails in violation of 18 U.S.C. § 2252(a)(2) and also entered a conditional guilty plea to violating § 2252(a)(4)(B).[16]  *Loy II,* 237 F.3d. at 255.  The sentence that was imposed included a three year term of supervised release with conditions that included testing and treatment for drugs and

---

[15]  Nonobscene, sexually explicit materials involving persons over the age of seventeen are protected by the Constitution, without regard to their social worth.  *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994), *Stanley v. Georgia*, 394 U.S. 557, 563-64 (1969).

[16] Loy  reserved his right to challenge the legitimacy of an anticipatory search warrant that was used during the course of the investigation.  *See Loy I*, 191 F.3d at 364.

alcohol, a prohibition on unsupervised contact with minors, and a prohibition against possessing any kind of pornography. *Id.* On appeal, Loy challenged each of those conditions. *Id.* at 253. He argued that there was nothing in the record to suggest that drug and alcohol treatment or counseling was appropriate. *Loy I*, 191 F.3d at 370. He also argued that prohibiting unsupervised contact with minors and the possession of any kind of pornography was "not reasonably related to any of the statutory goals and involve[d] a greater deprivation of liberty than required." *Id.* at 371.

We remanded the case to the District Court for resentencing because the court imposed the special conditions "without making any factual findings relating to them or providing any reasons in support of them." *Id.* "Since we [could] not know why the district court imposed these conditions, we [could not] properly review Loy's abuse of discretion claim." *Id.* In remanding, we "remind[ed] the court that the conditions of supervised release must be reasonably

32

related to the goals of deterrence, protection of the public and rehabilitation of the defendant." *Id.* (citing 18 U.S.C. §§ 3583(d)(1), 3553(a)(2)).  We added, "[*m*]*oreover, we caution that any condition implicating the deprivation of liberty can be no greater than necessary to meet these goals*." *Id*. (emphasis added) (citing 18 U.S.C. § 3583(d)(2)).

On remand, the District Court eliminated the requirement of drug and alcohol testing and treatment but reimposed the conditions "barring Loy from possessing pornography of any type, as well as from having any unsupervised contact with minors." *Loy II*, 237 F.3d at 255.  The court amended the latter condition to  add the requirement that "any supervision must come from someone other than [Loy's] wife" because information learned during the investigation suggested that she was also involved with child pornography.  *Id.*

In reimposing the conditions, the court explained that "'it is sometimes impossible to differentiate between children and adults in pornographic materials,' [and the prohibition of all

33

pornography] was necessary to protect children who are victimized in child pornography as well as to deter Loy from further criminal conduct or from attempting to obtain illegal child pornography." *Id*. (quoting the District Court's opinion). Loy again appealed. *Id.* at 253. He argued that the ban on "all forms" of pornography was overbroad and that the prohibition against unsupervised contact with minors was not reasonably related to statutory goals of sentencing and interfered with his right to procreate and raise a family. *Id.*

In adjudicating the appeal, we described the ban on all forms of pornography as "an unusually broad condition." *Id.* at 266. We concluded that a ban is not "'narrowly tailored' if it restricts First Amendment freedoms without any resulting benefit to public safety." *Id.* We explained that the ban the court imposed was so broad that it extended "not only to *Playboy* magazine, but also to medical textbooks[,] . . . serious art [and] ubiquitous advertising." *Id*. at 266-67. Since it included both legal and illegal pornography, it was overly broad and

34

could not stand. *Id.* at 267. We also concluded that it violated Loy's due process rights by "failing to provide [him] with adequate notice of what he may and may not do, chilling First Amendment rights in the process." *Id*. at 267.

As we noted above, that sentence was imposed by the same judge who imposed the sentence here. However, unlike the undefined ban the judge imposed in *Loy*, the court here incorporated 18 U.S.C. § 2256(2) into the prohibition into the definition of "pornographic material" in an apparent attempt to avoid the fatal flaw that afflicted the sentence in *Loy*. The definition of "sexually explicit conduct" contained in § 2256(2) is set forth below.[17] However, even given this refinement, the

---

[17] 18 U.S.C.§ 2256(2) defines "sexually explicit conduct," as follows:
> **(2)(A)** actual or simulated--
> **(I)** sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
> **(ii)** bestiality;
> **(iii)** masturbation;
> **(iv)** sadistic or masochistic abuse;  or
> **(v)** lascivious exhibition of the genitals or pubic area of any person[.]

prohibition on possessing sexually explicit material still sweeps within its reach some legal adult pornography as well as illegal child pornography. Thus, in attempting to avoid the problems the court encountered in *Loy*, it ignored our caution that "the deprivation of liberty can be no greater than necessary to meet [the] goals [of 18 U.S.C. § 3583(2)]." *Loy I*, 191 F.3d at 371. Furthermore, the court once again failed to provide an analysis or explanation to support this broad restriction.

We realize that the court attempted to justify the prohibition of adult pornography on remand in *Loy* by relying upon the asserted difficulty of knowing whether persons depicted in pornography are minors. 237 F.3d at 255. However, that justification does not appear anywhere on this record. We will not scour the jurisprudence of a sentencing judge in an attempt to divine the justification for a sentence based upon similar sentences that the judge may have explained in a similar

case years before, especially since § 3583 requires sentencing courts to explain the sentences they impose.

Moreover, even if we were to reach beyond this record and assume the court was relying upon the same justification it furnished in *Loy*, the instant condition would still be problematic because it includes legal pornography depicting individuals who are clearly not minors. Accordingly, we will also vacate this condition of special release.

## C. RESTRICTION ON ASSOCIATING WITH CHILDREN

The District Court prohibited Voelker from associating with minors without the prior approval of the Probation Officer and mandated that any such contact be in the presence of an adult who is familiar with Voelker's criminal background. Voelker argues that this condition prevents him from having unsupervised contact with his two children or any children he may have in the future. He claims that it therefore interferes with his constitutional right of procreation, as well as his fundamental liberty and his freedom of association under the

37

First Amendment. Since Voelker did not object to this condition

at sentencing, we review for plain error. *See Jones v. United*

*States*, 527 U.S. 373, 389 (1999).

> In order for us to find plain error:
>
> There must be an "error" that is "plain" and that
> "affects substantial rights." The deviation from a
> legal rule is "error," and an error is "plain" if it is
> "clear" or "obvious." In most cases, an error
> affects substantial rights if it is prejudicial, i.e.,
> "affected the outcome of the district court
> proceedings." . . . We will exercise our discretion
> and vacate the sentence if the plan error affecting
> substantial rights also "seriously affects the
> fairness, integrity, or public reputation of judicial
> proceedings."

 *United   States v. Evans*, 155 F.3d 245, 251 (3d. Cir.1998)

(internal citations omitted).

"A plainly erroneous condition of supervised release will

inevitably affect substantial rights, as a defendant who fails to

meet that condition will be subject to further incarceration."

*United States v. Pruden*, 398 F.3d 241, 251 (3d Cir. 2005).

Similarly, "imposing a sentence not authorized by law seriously

38

affects the fairness, integrity, and reputation of the proceedings."
*Evans*, 155 F.3d at 252.

We have held that a sentence is "imposed in violation of law," and therefore plainly erroneous, when it is imposed without proper consideration for the statutory factors that govern sentencing. *United States v. Cooper*, 437 F.3d 324, 328 (3d Cir. 2006). "The court need not discuss every argument made by a litigant . . . . Nor must the court discuss and make findings as to each of the §3553(a) factors . . . ." *Id.* at 329. However, the record must contain sufficient reference to those factors to allow us to review for reasonableness.

We need not engage in an in-depth discussion of this claim. There is evidence on this record that Voelker exposed his daughter's buttocks over the internet using his webcam. There is also evidence that he jeopardized his minor daughter's welfare by offering her for sex during an online communication. Although Voelker claims that he never intended to follow through with that offer and that he was merely "role-playing,"

the record nevertheless clearly support restricting his association with minors. However, the court delegated absolute authority to the Probation Office to allow any such contacts while providing no guidance whatsoever for the exercise of that discretion. Thus, Voelker's Probation Officer becomes the sole authority for deciding if Voelker will ever have unsupervised contact with any minor, including his own children, for the rest of his life. This is the very kind of unbridled delegation of authority that we struck down in *Loy II*. *See* 237 F. 3d at 266. There, we stated: "[T]he sentencing court may not wholesaledly 'abdicate[] its juridical responsibility' for setting the conditions of release." *Id.* (quoting *United States v. Mohammad*, 53 F.3d 1426, 1438 (7th Cir. 1995)).[18]

Even though the record contains evidence that supports a conclusion that Voelker may be capable of exploiting his own children, it is not clear to us that the District Court intended this

---

[18] In *Mohammad*, the court vacated an order of restitution because the sentencing court allowed the probation officer to decide the method of payment. 53 F.3d at 1429.

40

lifetime ban on association with minors to extend to his own children.  In *Loy II,* we resolved the profound legal issues that arose from a three year ban on association with minors by assuming that the court did not intend it to apply to the defendant's own family. We explained: "Given the severe intrusion on Loy's family life that would otherwise result, we believe that, absent a clearer sign from the District Court, the condition should be construed to apply only to other people's children, and not to Loy's own." *Loy II*, 237 F. 3d at 270.

Although we resolved the ambiguity in *Loy* by supplying a presumption that ameliorated the problems that would have arisen had the ban included the defendant's own family, we cannot do that here.  Given this record, the court may have intended the condition to extend to Voelker's own family. On remand, the court will have yet another opportunity to clarify the intended scope of this restriction and to provide sufficient guidance for the exercise of the Probation Officer's discretion if a ban on associating with minors is reimposed.

We do not now express any opinion about the legality of a condition that so drastically interferes with one's right to associate with one's own children. We do, however, caution that any lifetime ban on association with minors should be supported by sufficient evidence to resolve the dispute over whether Voelker was simply role-playing. On remand, the court may wish to supplement this record with expert testimony from persons knowledgeable in this area in order to better resolve the dispute about Voelker's potential threat to children, particularly his own children, rather than merely adopting the findings of the Presentence Report without further explanation. This is particularly true since the record does not set forth the expertise of the person(s) who prepared the Presentence Report, in addressing this sensitive and difficult area.

We need not reiterate that a sentencing court has broad discretion in fashioning an appropriate sentence and in resolving any factual dispute relevant to that difficult task. It is equally clear that the court should proceed cautiously in imposing any

42

condition that could impact Voelker's parental rights absent sufficiently reliable supporting evidence. We realize, of course, that parental rights are not absolute and that they are subject to the state's interest in the welfare of the defendant's children. Parents can "lose custody of their children or have restrictions placed on their parental rights" when there is sufficient evidence "to support a finding that children are potentially in danger from their parents." *Loy II*, 237 F.3d at 269. However, there must be sufficient "evidence to support a finding that children are potentially in danger from their parents, [otherwise] the states' interest cannot be said to be 'compelling,' and thus interference in the family relationship is unconstitutional." *Id*. at 269-70.[19]

---

[19] Voelker is now receiving psychological evaluation and treatment. Those actively involved in his treatment are well placed to assist the District Court in determining whether Voelker poses a sufficient threat to children to justify this restriction. On remand, the court will have access to the professionals treating Voelker as well as other professionals who can assist in determining the propriety of any condition restricting his contact with minors and whether any such restriction should extend to his own children. That testimony can assist the court's analysis under § 3553(a).

43

### III. CONCLUSION.

It is indeed unfortunate that we have had to review a sentence that mirrors one that this same judge previously imposed that we had to vacate not once, but twice. We realize that cases involving child pornography can be particularly difficult because they involve especially defenseless and vulnerable victims. Nevertheless, having previously explained the necessity for narrowly tailoring the kind of conditions of supervised release that were imposed here, we once again have to remand with instructions nearly identical to those we issued twice before. The court's failure to apply our decision in *Loy* is even more worrisome when we consider that the conditions we vacated there pertained to a term of supervised release that only lasted three years. Here, for reasons that are not at all apparent on this record, the court concluded it was appropriate to impose a lifetime period of supervised release on a thirty-five year-old defendant, with the conditions we have discussed,

without any explanation of why such an unprecedented sanction was necessary or appropriate.

We would have hoped that the judge would have realized the need for even greater care in ensuring the proper nexus between sentence, offense, and offender given the lifetime duration of the conditions imposed. Yet, it appears that this sentence was imposed with no more analysis, support, or explanation than was the case in *Loy*.

Accordingly, for the foregoing reasons, we will vacate the challenged conditions of supervised release and remand to the District Court for further proceedings consistent with this opinion.