**UNITED STATES of America**

**v.**

**Christopher RENDA, Appellant.**

**No. 09–2406.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Jan. 29, 2010.

Filed: March 8, 2010.

Martin C. Carlson, Esq., Theodore B. Smith, III, Esq., Office of United States Attorney, Harrisburg, PA, for United States of America.

John F. Yaninek, Esq., Mette, Evans & Woodside, Harrisburg, PA, for Appellant.

Before: FUENTES and FISHER, Circuit Judges, and DIAMOND,* District Judge.

## OPINION OF THE COURT

DIAMOND, District Judge.

Christopher Renda challenges two special conditions of supervised release imposed following his conviction for possession of firearms by a convicted felon. 18 U.S.C. § 922(g)(1). For the reasons that follow, we affirm.

### I.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

### II.

We ordinarily review the imposition of special conditions of supervised release for abuse of discretion. *See United States v. Crandon,* 173 F.3d 122, 127 (3d Cir.1999). When no objection is made before the district court, however, "review is for plain error." *United States v. Warren,* 186 F.3d 358, 362 (3d Cir.1999).

### III.

Because we write primarily for the Parties, we will summarize only those facts pertinent to our analysis.

Renda was arrested following an investigation conducted by the Bureau of Alcohol, Tobacco, and Firearms ("ATF"). (PSR ¶ 3,7.) ATF agents interviewed Ken Fink, Renda's former employer, who stated that

Renda "had made threatening remarks about various local officials and judges who had handled prior cases involving Renda." (PSR ¶ 7.) Fink told ATF agents that "on one occasion, while [Fink] and Renda were driving together, Renda pointed out a residence which Renda said belonged to a York County judge and indicated that he wanted to put a bomb under the judge's vehicle." (*Id.*) Authorities subsequently identified the Judge as Sheryl Dorney of the York County Common Pleas Court. (App. at 30, 36.) The agents executed a search warrant for Renda's home where they found smokeless powder, fuses, and hundreds of rounds of live ammunition. (PSR ¶ 9.) Agents also found books "relat[ed] to bomb-making, improvised devices, firearms, and firearms silencers." (PSR ¶ 8.)

On December 22, 2008, Renda pled guilty to one count of possession of a firearm by a convicted felon. 18 U.S.C. § 922(g)(1). At sentencing, Renda objected to the threat description in the Presentence Report, and "categorically denie[d] making any threat to harm anyone." (App. at 31.) The prosecutor acknowledged that because the Government could not corroborate Fink's account of Renda's threats, it would not seek any sentencing enhancements based on those threats. (*Id.* at 33.) The prosecutor maintained, however, that "[t]he [PSR] is accurate and complete in that it notes those allegations are what caused us out of a concern for the safety of judicial officers in York County and other public officials to commence this investigation. . . ." (*Id.*)

The District Court overruled Renda's objection to the PSR, stating that

---

* Honorable Paul S. Diamond, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

this is part of the story, the whole picture here, and I'm not going to remove them from the presentence report. I will, however, state in light of [the prosecutor's] statement that they should not be credited by the Bureau of Prisons for the purposes of determining punishment or appropriate institution or any of the other matters that might be involved in referring to them. (*Id.* at 34).

The District Court was familiar with Renda, having presided over his trial for weapons and drug offenses "in the early 80's." (App. at 42.) In imposing sentence, the Court discussed why a sentence of incarceration was necessary despite Renda's advanced age (74) and poor health:

I feel bad for Mr. Renda and his several problems, but perhaps his health problems can be effectively addressed by the institution to which he will go. In light of his history I do have a concern about recidivism and I also think because of that history a punishment is appropriate, and so I am going to indicate in my, that in my opinion the guideline range here is a reasonable one and appropriate one. In light of his age and his health, I will sentence him at the bottom of that range. Mr. Renda as we have said has been in trouble many times over the years, and while he seems to have protected the guns as much as possible, just the mere fact that he had them, with his record, was a dumb thing to do.

(*Id.* at 42–43.) The District Court imposed a sentence within the advisory Guidelines range—fifteen months imprisonment and two years of supervised release with special conditions, including:

The defendant shall be placed on home detention with electronic monitoring during the period of supervised release, as directed by the probation officer. During this time, the defendant shall remain at his place of residence except for employment, education, religious activities, treatment, necessary shopping, or other activities pre-approved by the probation officer. The defendant shall comply with the rules of the location monitoring program, and shall maintain a telephone without any special features at his place of residence. Payment of the daily cost of location monitoring is waived; and The defendant shall [have] no contact or attempted contact with Judge Sheryl Dorney.

(*Id.* at 6.)

Although Renda did not object to these special conditions, he asks us to strike them as unreasonable.

## IV.

Because Renda did not object below, we review his sentence for plain error. *See United States v. Pruden,* 398 F.3d 241, 248 (3d Cir.2005). To meet this standard, "[t]here must be an error that is plain and that affects substantial rights.'" *United States v. Evans,* 155 F.3d 245, 251 (3d Cir.1998) (internal quotation marks and citation omitted). We will vacate a sentence only "if the plain error affecting substantial rights also seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 251 (internal quotation marks and citations omitted).

Pursuant to 18 U.S.C. § 3583, a sentencing judge may impose special conditions of supervised release, as long as the conditions are "reasonably related to the sentencing factors set forth in § 3553(a), the nature and circumstances of the offense and the history and characteristics of the defendant, and must involve no greater deprivation of liberty than is reasonably necessary to afford adequate deterrence, to protect the public from future crimes, and to rehabilitate the defendant." *United States v. Mizwa,* 345 Fed.Appx. 834,

836 (3d Cir.2009); 18 U.S.C. § 3553(a); 18 U.S.C. § 3583(d). Accordingly, "[c]onditions of supervised release must be supported by some evidence that the condition imposed is tangibly related to the circumstances of the offense, the history of the defendant, the need for general deterrence, or similar concerns." *United States v. Voelker,* 489 F.3d 139, 144 (3d Cir.2007).

The District Court did not make separate findings regarding the special conditions imposed, undoubtedly because Renda did not object to them. The record nonetheless amply demonstrates the reasons for the conditions. *See id.* ("Where a sentencing court fails to adequately explain its reasons for imposing a condition of supervised release or the condition's relationship to the applicable sentencing factors, we may nevertheless affirm the condition if we can 'ascertain any viable basis for the ... restriction in the record before the District Court ... on our own.' ") (citing *Warren,* 186 F.3d at 367).

Renda's criminal history goes back to 1953, and includes three convictions for weapons-related offenses, including possession of pipe bombs. (PSR ¶ 24–28.) At the time of the pipe bomb incident, Renda also possessed a 9mm machine gun, a silencer, two pistols, and two 22 caliber silencers. (PSR ¶ 27.) When they searched his home in 2008, ATF agents found a small arsenal, including bomb-making materials. Mr. Fink said that Renda had threatened "various local officials and judges who had handled prior cases involving Renda," and wanted to bomb the car of a judge determined to be Sheryl Dorney. The record further confirms that as a York County Assistant District Attorney, Ms. Dorney had prosecuted Renda, who subsequently appeared before Dorney after she became a Judge. (App. at 35.) At sentencing, Judge Dorney stated that over the thirty years she had dealt with Renda, she had learned that he "does not obey court orders ... [h]e does not obey the law." (*Id.*) Judge Dorney asked the Court to impose supervised release conditions that included electronic monitoring and prohibiting Renda from coming within a mile of her home. (*Id.* at 36.) The Government reiterated that request. (*Id.* at 36–37.)

The Court did not bar Renda from the area around Judge Dorney's home. Rather the Court narrowed the restriction, prohibiting Renda from having any contact with Judge Dorney. Although the electronic monitoring and home confinement are obviously restrictive, Renda may leave his residence for "employment, education, religious activities, treatment, necessary shopping, or other activities pre-approved by the probation officer." (App. at 6.)

In these circumstances, we cannot say that the District Court committed plain error. On the contrary, the record amply demonstrates that the imposition of special conditions is "tangibly related to the circumstances of the offense [and] the history of the defendant." *Voelker,* 489 F.3d at 144. Moreover, the conditions "impose no greater deprivation of liberty than is reasonably necessary" in the circumstances presented. 18 U.S.C. § 3583(d)(2).

## V.

For the reasons stated, we will affirm the sentence imposed by the District Court.