## IN THE UNITED STATES COURT OF APPEALS
### FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 30, 2012

No. 11-50354

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

JOSEPH D. SIMINGTON,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas
(10-CR-2275)

Before STEWART, ELROD, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Joseph D. Simington was required to register as a sex offender. He failed to do so in early 2010 and was subsequently prosecuted for violating the Sex Offender Registration and Notification Act. After being found guilty, Simington was sentenced to twenty-four months imprisonment and five years of supervised release. As a condition of his supervised release, Simington was ordered to "refrain from purchasing, possessing, or using any sexually stimulating or sexually oriented materials including but not limited to written, audio and visual

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-50354

depictions, such as, pornographic books, magazines, photographs, films, videos, DVDs, computer programs, or any other media for portrayal of the same." On appeal, he primarily challenges the imposition of this condition. For the following reasons, we affirm the district court's judgment.

## I.

## A.

In 2000, Joseph D. Simington was convicted in Montana of sexual assault and sentenced to eight years imprisonment. The factual basis of his conviction involved a situation in which Simington provided alcohol to minors and had sex with a 13-year-old girl.

Simington's sentence was suspended after he completed a boot camp program. On March 19, 2001, Simington received the benefit of a conditional release. Less than a month later, he was arrested for a DUI charge. The following year, Simington's probation was revoked.

In March 2003, Simington was again granted a conditional release. Within six months, he returned to prison due to violations of his probation conditions. On August 23, 2004, Simington was granted a third conditional release. Because he again violated the terms of his release, he found himself back in prison less than two months later.

On November 21, 2005, Simington was furloughed. After yet another violation of the terms of his release, Simington was sentenced to three years imprisonment. He was released from custody on January 12, 2009.

Simington moved to Texas in 2009. That same year, he signed a prerelease form, as required by the Texas Sex Offender Registration Program, acknowledging that he was subject to a lifetime registration requirement. By signing this form, he recognized a duty to notify police within seven days of a change of address, along with the responsibility to personally report to his primary registration authority no later than seven days before moving. This

No. 11-50354

form indicated that a failure to fulfill these obligations was a felony offense. On October 14, 2009, Simington completed his initial registration with the El Paso Police Department. He updated his registration in each of the following two months.

On April 5, 2010, Officer Ted Saiz of the El Paso Police Department conducted a compliance check at Simington's registered address. When Saiz arrived at this address, he spoke with Simington's sister, Sonia Morales. During their conversation, Morales informed Saiz that Simington had told her that he was moving back to Montana. Simington also told Morales that he was going to report his move to the El Paso Police Department. In fact, however, Simington had not told the police about his move.

Subsequently, Detective Chad Lawrence of the Helena Police Department was informed by Simington's mother that Simington had returned to Montana. On April 14, 2010, Deputy Michael Sharboneau contacted the Montana Department of Justice and was told that Simington was not registered as a sex offender in Montana. Approximately three months later, Simington was arrested in Helena. At the time of his arrest, he still had not registered with the Montana Department of Justice and had not informed the El Paso Police Department of his relocation.

**B.**

In August 2010, Simington was indicted in the Western District of Texas. The one-count indictment alleged that Simington's failure to register with authorities violated the Sex Offender Registration and Notification Act ("SORNA").

Simington was found guilty of the charged offense on January 18, 2011. In March 2011, the Probation Office completed Simington's Presentence Investigation Report, which, among other things, documented Simington's lengthy criminal history and his problems with alcohol abuse.

3

No. 11-50354

The following month, the district court sentenced Simington to twenty-four months imprisonment and five years of supervised release. During the oral pronouncement of Simington's sentence, the district court, in describing Simington's conditions of supervised release, stated the following: "You will be ordered to refrain from purchasing, possessing or using any sexual stimulating or sexually oriented materials, including but not limited to, written, audio and visual depictions." When provided with the opportunity, Simington lodged the following objection: "The one condition the Court indicated relating to possessing sexually stimulating material. We'd object that that's vague and ambiguous and overbroad and not related to the offense. This is not a child pornography case."

One day after Simington's sentencing hearing, the district court entered a written judgment that included an expanded version of the condition that was described at sentencing. The written condition specifically ordered that Simington "refrain from purchasing, possessing, or using any sexually stimulating or sexually oriented materials including but not limited to written, audio and visual depictions, such as, pornographic books, magazines, photographs, films, videos, DVDs, computer programs, or any other media for portrayal of the same." Simington filed a timely notice of appeal.

## II.

On appeal, Simington raises the following four issues: (1) "[w]hether the district court abused its discretion by imposing a supervised release condition forbidding Simington from possessing any sexually oriented materials"; (2) "[w]hether Congress lacked authority under the Commerce Clause to enact SORNA"; (3) "[w]hether his SORNA conviction violates [his] due process rights because no state has implemented SORNA"; and (4) "[w]hether, to prove a violation of SORNA, the Government must prove that the accused knew of SORNA's requirements." In his brief, Simington acknowledges that any challenge related to the latter three issues is foreclosed by circuit precedent.

No. 11-50354

Because we cannot overrule decisions of prior panels, *see, e.g.*, *Billiot v. Puckett*, 135 F.3d 311, 316 (5th Cir. 1998), we will only consider the first issue raised by Simington.

### III.

Under the rubric of his first issue, Simington presents three arguments in support of his challenge to the relevant condition of supervised release. First, he argues that this condition "is so broad it forbids him to have legal adult pornography, or any other legal sexually oriented material, thus impinging his First Amendment rights." Second, he contends that this condition is substantively unreasonable and violates the First Amendment because it forbids him from possessing legal sexually oriented material that is not pornographic. Third, he maintains that this condition violates his due process rights because it fails to give sufficient notice of what he is banned from possessing while on supervised release. With the contours of these arguments in mind, we now turn to considering the applicable standard of review.

"To preserve error, an objection must be sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction." *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009) (citation omitted). In determining whether an argument has been preserved for appellate consideration, our central inquiry involves a comparison of the specificity and clarity of the initial objection and the nature of the error raised on appeal. *See id.* at 272-73.

Here, we conclude that Simington's objection to the district court's oral pronouncement of the challenged condition did not adequately preserve his First Amendment arguments. When considered in the context of the sentencing hearing, we are unconvinced that the district court was provided with notice and an opportunity to correct the putative First Amendment errors that are now raised on appeal.

No. 11-50354

In the specific context in which it was made, the relevant portion of Simington's objection–specifically, where he stated that the condition was "overbroad and not related to the offense"– is ambiguous and can be interpreted as raising a statutory challenge[1] to the condition rather than attacking the condition on First Amendment grounds.  Under our reading of the record, the objection was unclear and thus failed to alert the district court to the First Amendment implications of the challenged condition.  *Cf. United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009) (concluding that an argument was not preserved because the objection at trial failed to apprise the district court of nature of the alleged error).  Stated differently, Simington did not properly raise a First Amendment objection before the district court.  Indeed, we have recently concluded that a comparable objection failed to preserve identical First Amendment arguments.  *See United States v. Miller*, 665 F.3d 114, 135 (5th Cir. 2011).

Simington's vagueness objection, however, does not suffer the same defect.  The term "vague" is well established in due process jurisprudence and does not lend itself to a plausible alternative interpretation in the context in which it was

---

[1]    By statute, a district court is granted "wide discretion to impose any supervised release condition that it considers to be appropriate."  *Woods*, 547 F.3d at 517 (citing 18 U.S.C. § 3583).  That discretion, however, is limited by three specific requirements.  18 U.S.C. § 3583(d).  First, the condition must be reasonably related to the following four factors: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the need "to afford adequate deterrence to criminal conduct"; (3) the need "to protect the public from further crimes of the defendant"; and (4) the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  *Id.* § 3583(d)(1); 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D).  Second, the condition cannot involve a greater deprivation of liberty than is reasonably necessary to achieve the latter three statutory factors.  18 U.S.C. § 3583(d)(2).  Third, the condition must be "consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. [§] 994(a)."  *Id.* § 3583(d)(3).  At oral argument, Simington conceded that his objection during sentencing could be interpreted as a Section 3583 challenge to the condition of supervised release at issue in this case.

used by Simington. We therefore conclude that Simington has preserved his due process argument.

In sum, we will review Simington's unpreserved First Amendment challenge for plain error. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). Because it has been preserved, his due process challenge to the relevant condition of supervised release will be reviewed for abuse of discretion. *See United States v. Woods*, 547 F.3d 515, 517 (5th Cir. 2008) (citations omitted). We will begin our consideration of these challenges by addressing Simington's First Amendment contentions.

### A.

Under the plain error standard of review, "[a]n appellate court may not correct an error the defendant failed to raise in the district court unless there is '(1) error, (2) that is plain, and (3) that affects substantial rights.'" *United States v. Mares*, 402 F.3d 511, 520 (5th Cir. 2005) (quoting *United States v. Cotton*, 535 U.S. 625, 631 (2002)). It is the appellant's burden to satisfy these first three conditions. *See United States v. Vonn,* 535 U.S. 55, 62-63 (2002). "'If all three conditions are met an appellate court may then exercise its discretion to notice a forfeited error but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Mares*, 402 F.3d at 520 (quoting *Cotton*, 535 U.S. at 631).

We have recently decided two cases involving substantially similar First Amendment challenges to comparable conditions of supervised release. *See Miller*, 665 F.3d at 135-36; *United States v. Hilliker*, No. 11-50112, 2012 WL 1255020 (5th Cir. Apr. 13, 2012). In both *Miller* and *Hilliker*, we applied plain error review in considering these First Amendment challenges. And, in both, we denied relief. The same general analysis and outcome is warranted here.

Given the lack of clear direction regarding the First Amendment implications of the challenged condition, Simington has not carried his burden

of showing that the district court's putative error was plain. *See United States v. Salinas*, 480 F.3d 750, 756 (5th Cir. 2007) ("An error is considered plain, or obvious, only if the error is clear under existing law.") (citation omitted); *Hilliker*, 2012 WL 1255020, at \*2 (stating that "because the law is unsettled regarding First Amendment overbreadth challenges, [appellant] cannot demonstrate error that is plain because such an error must be clear under existing law"). Simington's First Amendment arguments therefore do not provide a basis for granting him relief under the plain error standard of review. We now turn to considering Simington's due process challenge.

**B.**

It is an "axiomatic requirement of due process that a statute may not forbid conduct in terms so vague that people of common intelligence would be relegated to differing guesses about its meaning[.]" *Schad v. Arizona*, 501 U.S. 624, 632 (1991) (citation omitted). This notice requirement also applies to a condition of supervised release. *See United States v. Paul*, 274 F.3d 155, 166 (5th Cir. 2001) (citing *United States v. Loy*, 237 F.3d 251, 262 (3d Cir. 2001)).

Despite this notice requirement, a lack of specificity is not necessarily fatal to the validity of a supervised release condition. *See id.* at 166. "[W]hile a probationer 'is entitled to notice of what behavior will result in a violation, so that he may guide his actions accordingly . . . [c]onditions of probation do not have to be cast in letters six feet high, or to describe every possible permutation, or to spell out every last, self-evident detail." *Id.* at 166-67 (quoting *United States v. Gallo*, 20 F.3d 7, 12 (1st Cir. 1993)). Conditions of supervised release "'may afford fair warning even if they are not precise to the point of pedantry. In short, conditions of probation can be written–and must be read–in a commonsense way." *Id.* at 167 (quoting *Gallo*, 20 F.3d at 12).

When framing the contours of supervised release conditions, "sentencing courts must inevitably use categorical terms[.]" *Id.* "Such categorical terms can

provide adequate notice of prohibited conduct when there is a commonsense understanding of what activities the categories encompass." *Id.* "Indeed, it is well established that the requirement of reasonable certainty 'does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding.'" *Id.* (quoting *Birzon v. King*, 469 F.2d 1241, 1243 (2d Cir. 1972)).

Recently, we have concluded that this commonsense approach would, independent of the standard of review, apply to evaluating conditions of supervised release identical to the one presently before us. *See Miller*, 665 F.3d at 137 (stating that a "commonsense reading would be required even if [the court] reviewed a preserved objection"). We will therefore adhere to this approach in deciding this appeal.

Applying a commonsense approach to reading the challenged condition of supervised release, we conclude that it provides adequate notice of the types of materials Simington is prohibited from "purchasing, possessing, or using[.]" While a skilled legal imagination can certainly think of various literary, biblical, or artistic materials that may theoretically be covered by this condition, we conclude that a commonsense reading of the relevant terms of Simington's supervised release gives him adequate notice of the materials he is barred from accessing. In the past, we have rejected attempts to elevate the theoretical over the practical when considering conditions of supervised release. *See United States v. Phipps*, 319 F.3d 177, 193 (5th Cir. 2003) (applying a commonsense approach to reading conditions of supervised release and disagreeing with a defendant's suggestion that a comparable condition could apply to "newspapers and magazines that contain lingerie advertisements or even to the 'Song of Solomon'"); *cf. Paul*, 274 F.3d at 155 (concluding that a condition of supervised release limiting access to "places, establishments, and areas frequented by minors" was not impermissibly vague). Although Simington points out that

No. 11-50354

some of our sister circuits would probably reach a different result in this case,[2] we are bound by our precedent discussed above.

Accordingly, we conclude that the challenged condition of supervised release comports with due process. The district court therefore did not abuse its discretion in imposing it.

## IV.

For these reasons, we AFFIRM the district court's judgment.

---

[2] *See, e.g.*, *United States v. Voelker*, 489 F.3d 139, 150-51 (3d Cir. 2007) (vacating a special condition of supervised release prohibiting a defendant from "possessing any textual description or visual description of 'sexually explicit conduct"); *United States v. Antelope*, 395 F.3d 1141-42 (9th Cir. 2005) (vacating special condition of supervised release restricting possessing of "any pornographic, sexually oriented or sexually stimulating materials"); *United States v. Cabot*, 325 F.3d 384, 385 (2d Cir. 2003) (vacating a special condition prohibiting possession of "matter that depicts or alludes to sexual activity").