*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0114p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee*,

                                                        No. 12-5662

            *v.*

RODNEY S. DOTSON, JR.,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:11-cr-20064-1—Jon Phipps McCalla, Chief District Judge.

Decided and Filed:  April 22, 2013

Before:  KETHLEDGE, WHITE, and STRANCH, Circuit Judges.

_____

## COUNSEL

_____

**ON BRIEF:** Needum L. Germany III, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant.  Dan L. Newsom, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

_____

## OPINION

_____

JANE B. STRANCH, Circuit Judge.  Defendant Rodney Dotson, Jr., was charged with sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a) and possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B).  Prior to trial, the government sought to enter a redacted version of the statement Dotson gave to the authorities following his arrest.  Although Dotson requested that the statement be admitted in its entirety, the district court ruled that the redacted portions were inadmissible.  A jury convicted Dotson on both counts, and the district court sentenced him to a prison term of 22 years.  The court also imposed a 20-year term of supervised

1

release, which carried with it a number of conditions.  Dotson appeals, contending (1) that the district court abused its discretion in not admitting his entire statement and (2) that the district court plainly erred in imposing several conditions of supervised release.  For the following reasons, we hold that the district court did not abuse its discretion in admitting the redacted statement.  Because we conclude that the district court did not articulate a rationale for imposing some of the conditions of supervised release, however, we VACATE the judgment with respect to these conditions only and REMAND for further proceedings consistent with this opinion.

## I.  FACTS

The defendant, Rodney Dotson, Jr., resided with his girlfriend, M.C., and her four-year-old daughter, A.C.,[1] the victim.  M.C. discovered that the memory card to Dotson's cellular phone contained inappropriate photographs of A.C. and turned the card over to the police.  The police also discovered videos of A.C. and images of other children that Dotson had downloaded from the Internet on the card.  After he was arrested and gave an incriminating statement, Dotson was charged with sexual exploitation of a minor and possession of child pornography.  *See* 18 U.S.C. §§ 2251(a) & 2252(a)(4)(B).

Prior to trial, the government filed a motion in limine seeking to redact certain portions of Dotson's written statement.[2]  The government contended that these portions of the statement (1) constituted inadmissible hearsay; (2) were irrelevant to the charges in the indictment; and (3) were unfairly prejudicial, likely to cause confusion of the issues, and/or had the potential to mislead the jury.  Dotson's counsel argued that the entire statement should be admitted based on the rule of completeness. The district court concluded that the redacted portions did not make any of the contested elements in the case more or less likely and would be more appropriately considered during sentencing;

---

[1]Pursuant to Federal Rule of Criminal Procedure 49.1(a)(3), a minor's initials are to be used in court filings.  We also use only the initials of the victim's mother in an effort to ensure anonymity.

[2]The government sought to admit the statement pursuant to Federal Rule of Evidence 801(d)(2)(A), which allows a "statement . . . offered against an opposing party [that] was made by the party in an individual or representative capacity" to be admissible as non-hearsay.

accordingly, the court granted the government's motion. Dotson's full statement is quoted below as written. The bold portion constitutes the redacted statement that was admitted into evidence:

> **My name is Rodney Dotson this is me at my worse. I'm disgraced with my actions. But this is me**, I was born and raised mostly in New York. Come from a family of high expectations and very good moral values. I was mainly with my mom my whole [life], my dad was in and out after I was born. She worked a lot to take care of us. So me, my older sister and two younger siblings stayed with my grandma in New York. She had a sick way of lookin at life but at 3 or 4 years old (me) I started noticing things about women and myself and didn't know why. At around that time I started having dreams at least I thought they were dreams but while I took a bath my grandma would start touching my privates and it felt good but I can't be sure whether it was a dream or just me being messed with. 1995 well we moved to Bolivar, tn life looked pretty good a fresh start ya' know, a fresh life. Things were gonna be great ya' know? But they weren't. I formed a habit of staying up late me and my brother (little brother) shared a room, mostly he slept with my mom and dad. So I was alone but I wandered a lot and most nights my dad was in my big sisters room. Didn't know why but eventually discovered he was touching her. He left and came back because my mom Idk loved em. So he was better, we all thought but one day I woke up early in 95' my dad wanted to take me to Walmart We shopped and stuff. When we got out of Walmart just me and him we drove to a location unknown to this day and he wanted to see my private so I showed he touched it I was kinda scared but he was my dad. This went on till 96' and by then It got worse his family molested me and my sister taught me how to have sex and my dad especially took great interest in me. One morning my dad was in my room told me to put my shirt over my head and pull my pants down so I did like usual but this time was different my mom woke up early too and was gonna come in my room he ran into the bathroom and left me like I was. I confessed everything to her and he was gone. 97'-99' I spent in NY back with my grandma things we different the neighborhood changed and everything. My problem with molestation still wasn't gone tho, now I had a mentally ill neighbor who messed with younger boys he worked for my grandma from time to time mowing the grass washing windows et. So one day while taking the trash out I met him and he automatically grabbed and squeezed my private and wouldn't let go till I touched his so I did. Never told anyone because I thought ppl would call me gay and treat me different. 99' lost myself, everything I've become was surrounded by anger, rage and distrust of authority figures. I continued to live with my mom for the next 8 year. Mom and dad permanently separated mom doesn't know

how shes gonna pay for the hotel room where we lived while going to Lexington High School. It was a battle day in day out I was 17 failing classes, uncertainty of where I'm a living so I left and drifted from place to place situations are getting worse I was home less mostly helped sell drugs to get by. Then a blessing happened **I met [M.C.] she was down and out her babies father kept leaving and she needed a father figure and somebody to spend her life with. So I stayed with her we were happy, her daughter and all of us were happy. Anytime we needed each other we were there ya know? But things started to get bad we were starting to not afford things. So we moved from [redacted street address] to a trailor Park where [A.C.] had her mom and I had mine with [M.C.] Things were normal outside of the fact we still couldn't afford stuff so once again we moved to my moms we lived in one room. Me [M.C.] and [A.C.], I didn't like the fact that [M.C.] let [A.C.] change in our room but she had to. So I left it alone we stayed there in that one room from May 09' to Feb or March 10' and moved to [redacted street address].** Things once again were wonderful ya' know? I hid my thoughts of wanting to marry [M.C.] for a long time never brought it up or anything. Small house, tention was all around between me and [M.C.] and her family not mention we lived next to an old man, who so many of my friends got either raped or molested by. Things were getting bad, But got better **[M.C.] gotta job and needed me to watch [A.C] or get her from school so I did. I noticed I didn't mind [A.C.] changing were I could see anymore I thought it was normal and ya' know that's what [M.C.] made me believe. So I thought it was ok. But eventually it turned into I guess you can say a bad thing. I was on a site one day looking for a song that I didn't wanna pay for and I found it what I didn't know is once you click on it you get everything that the person uploaded which in this case was the song of course but it came with some little girl pictures which 4 some reason I didn't get rid of them. I kept them and eventually found more and more and just saved them. A few weeks after that I knew something was wrong but the oddest thing least I thought it was odd was I didn't get aroused but I wouldn't delete em' and admitted to [M.C.] during a brief argument that I had a problem and I knew I thought about things that I shouldn't of. She didn't question it. So I went on, weeks passed and [A.C.] changed etc. I watched one time and I felt so bad about it but I didn't wanna make it seem like I lost control of this situation. I was gonna keep it to myself and figure out how and why I got this way. So I battled with it. [A.C.] wore clothes that showed too much I thought and I constantly told her to sit another way or told [M.C.] to change her. But images of her were in my head, disgraceful, and distasteful but they were there. And eventually it got worse she was sleepin and her pants were ll fitting any ways and I've seen it so I'd go over this time**

**and pull them down more placed my hand on her bottom and - a picture. Among several others I never got aroused but I liked lookin' at the pictures that night and call myself sick and nasty at the end of the night. I never touched her anywhere else from that point on it never happened again. I made a video, several of those too, one we were watching a movie and she said that lady has some big boobs a part of the movie I forgot to fast forward through but I said there not that big she said yest they were then she raised up her shirt and said hers weren't that big that bothered me I got mad at her for a min. and started watchin the movie again. Then Idky for some dumb reason I told her to do it again and she did and this I recorded it. At that moment I felt as the police or god or something was gonna get me. So I stayed my distance from her for the rest of the night I was afraid. But for some reason I still thought I had a handle on the problem didn't want her to know what I was doing shes not stupid shes really not. I was ashamed for it from the beginning ya' know? I knew I was doing this that's bad enough. So one more time I recorded her I wasn't going to do anything but she wanted me to go to the bathroom to turn on the light for so I did the next thing I know she took her pants off to use it and went to living room sat there and was Idk, thinkin' about a lot and how I told myself it would stop then I said this would be the time then I'm done for good I went in the bathroom and she was on the toilet I was pretendin like I was textin so she wouldn't know** I know how that feels to be taken advantage of by somebody who doesn't care if you know or don't. **So I was try na hide it, she sat up well stood up and I told her to reach into the tub while I was recording I saw her bottom and I felt like the ppl I hated but its something beyond my control. I have no clue where all of this came from and I don't why it happens randomly but it does.** I had a lot of pride and didn't want to admit it to no one because I've always been against things like this. But there it is, my ups and downs, my family I've hurt, so bad I can't imagine the pain [M.C.'s] feeling as I write this. And whats going through [A.C.'s] head seeing me gone but I guess one day I can apologize and become the man they need. I know can be it I just need some help. But in the mean time for [A.C., M.C.] and people workin' on this god awful case I'm sry.

Following a jury trial, Dotson was found guilty on both counts. The district court imposed a 22-year sentence on Count 1, with a 10-year sentence on Count 2 to be served concurrently, and determined that a 20-year period of supervised release was appropriate because of "concerns" it had about the circumstances of the case. This was the extent of the district court's explanation as to the specifics of Dotson's supervised release.

However, in addition to the mandatory and standard conditions of supervision, a number of other terms were imposed. These included, in pertinent part, (1) a prohibition on possessing any pornography; (2) a prohibition on using sexually oriented telephone numbers or computer services; (3) a prohibition on "possess[ing] or us[ing] a computer with access to any 'on-line service' or other forms of wireless communication at any location (including employment) without the prior approval of the Probation Officer," which included "any Internet Service Provider, bulletin board system or any other public or private network or email system"; and (4) a requirement that Dotson submit to drug testing and drug treatment programs as directed by his probation officer. Defense counsel did not lodge an objection to these conditions. Dotson timely appealed.

## II. ANALYSIS

### A. Redacted Statement

Dotson contends that without the omitted portions of his statement, the jury was left with the impression that he was simply preying on a vulnerable woman and her child, and that he lacked any remorse for his actions. In response, the government argues that the redacted portions lacked relevance and would not have placed the admitted portions into context if admitted.

Federal Rule of Evidence 106, which codifies the common law "rule of completeness," *see United States v. Holden*, 557 F.3d 698, 705 (6th Cir. 2009), provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." When ruling on a party's request to introduce additional portions of a statement pursuant to this rule, the district court must determine

> (1) whether the additional evidence explains the evidence already admitted; (2) whether it places the admitted evidence in its proper context; (3) whether its admission will serve to avoid misleading the trier of fact; and (4) whether its admission will insure a fair and impartial understanding of all of the evidence.

*United States v. McAllister*, 693 F.3d 572, 584 (6th Cir. 2012) (quoting *United States v. Glover*, 101 F.3d 1183, 1190 (7th Cir.1996)). However, "[t]his circuit has stated . . . that the [rule of completeness] does not make inadmissible evidence admissible," *United States v. Crosgrove*, 637 F.3d 646, 661 (6th Cir. 2011) (internal quotation marks omitted), and its application is "restrict[ed] . . . by the qualification that the portion sought to be admitted be relevant to the issue, and only those parts which qualify or explain the subject matter of the portion offered by opposing counsel should be admitted." *United States v. Gallagher*, 57 F. App'x 622, 628 (6th Cir. 2003) (internal quotation marks omitted).[3] We review a district court's admission of evidence for an abuse of discretion, which occurs if the ruling is based on "an erroneous view of the law or a clearly erroneous assessment of the evidence." *United States v. Semrau*, 693 F.3d 510, 520 (6th Cir. 2012) (internal quotation marks omitted).

Here, the redacted statement introduced by the government sought to establish that Dotson sexually exploited a minor and unlawfully possessed child pornography. As to the first offense, 18 U.S.C. § 2251(a) provides that

> [a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . shall [receive a sentence of not less than 15 years and not more than 30 years] . . . if that visual depiction was produced . . . using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer . . . .

As to the second offense, 18 U.S.C. § 2252(a)(4)(B) prohibits the knowing possession of items

---

[3]*Accord United States v. Lopez-Medina*, 596 F.3d 716, 735 (10th Cir. 2010) ("The rule of completeness . . . does not necessarily require admission of [an entire statement, writing or recording.] Rather, only those portions which are relevant to an issue in the case and necessary to clarify or explain the portion already received need to be admitted." (alteration in original) (internal quotation marks omitted)); *United States v. Haddad*, 10 F.3d 1252, 1258-59 (7th Cir. 1993) (stating that "the portions of the statement that the proponent seeks to admit must, of course, be relevant to an issue in the case"); *United States v. Dorrell*, 758 F.2d 427, 434 (9th Cir. 1985) (observing that because the application of the rule of completeness is "a matter for the trial judge's discretion" that he or she "may exclude portions of written statements offered into evidence that are irrelevant").

which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if . . . the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct.

The district court concluded that the redacted portions of Dotson's statement were not relevant to any issues in the case, that is, they did not have "any tendency to make a fact [of consequence in determining the action] more or less probable than it would be without the evidence." Fed. R. Evid. 401(a)–(b). We agree. The omitted portions—which illustrated that Dotson had a rough upbringing and had been sexually abused as a child; that he considered his girlfriend to be a "blessing" and had intended to marry her prior to encountering financial difficulties; and his concern that the victim knew he was exploiting her—did not make any fact of consequence related to these statutory offenses more or less probable than it would have been without them.

A case relied upon by the government, *United States v. Dorrell*, 758 F.2d 427 (9th Cir. 1985), is persuasive on this point. There, the defendant was convicted of willfully injuring United States property and knowingly entering a military reservation for an unlawful purpose. *Id.* at 429. He challenged the district court's redaction of his written confession, which explained his political and religious motivations for the crimes. *Id.* at 434. The Ninth Circuit concluded that the district court did not abuse its discretion by redacting this portion of his confession, observing that the defendant's motivations "did not alter the fact that he admitted committing the acts with which he was charged." *Id.* at 435.

Similarly here, the fact that Dotson had a troubled upbringing, cared for his girlfriend, and was concerned that the victim knew she was being exploited did not in any way inform his admission that he photographed the victim, made videos of her, and downloaded sexually explicit images of other children from the Internet. We find, therefore, that the district court did not abuse its discretion in ruling that the redacted

portions of Dotson's statement were irrelevant to the purpose for which the statement was admitted.

## B. Conditions of Supervised Release

Dotson challenges the conditions of supervised release (1) prohibiting him from possessing any pornography; (2) prohibiting him from using sexually oriented phone numbers or computer services; (3) prohibiting him from possessing or using a computer with access to any online service or other form of wireless communication without prior approval from a probation officer; and (4) requiring drug testing and drug treatment programs as directed by his probation officer. Because Dotson did not object to the imposition of these conditions, we are limited to plain error review. *See United States v. Inman*, 666 F.3d 1001, 1003 (6th Cir. 2012) (per curiam). In order to establish plain error, a defendant must show that (1) an error occurred; (2) the error was plain, that is, obvious or clear; (3) the error affected his substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Lucas*, 640 F.3d 168, 173-74 (6th Cir. 2011).

In determining whether plain error has been established under similar circumstances, we have found it helpful to reference the standard by which we review the imposition of a condition of supervised relief if the issue was properly preserved. *See Inman*, 666 F.3d at 1004. Our evaluation of a district court's decision—which is reviewed under the abuse of discretion standard, *see id.*—is two-fold. First, the district court must have "adequately stated in open court at the time of sentencing 'its rationale for mandating [the] special conditions.'"[4] *United States v. Brogdon*, 503 F.3d 555, 563 (6th Cir. 2007) (quoting *United States v. Carter*, 463 F.3d 526, 529 (6th Cir. 2006)). If this procedural requirement is met, the special conditions will be upheld on appeal if they are "'reasonably related to the dual goals of probation, the rehabilitation of the defendant and the protection of the public.'" *United States v. Maxwell*, 483 F. App'x

---

[4]However, if the reasons for imposing a condition are clear from the record, "[a] district court's failure to explain its reasons . . . will be deemed harmless error." *United States v. Carter*, 463 F.3d 526, 529 n.2 (6th Cir. 2006).

233, 238 (6th Cir. 2012) (quoting *Brogdon*, 503 F.3d at 563). "The condition must reasonably relate to the nature of the offense and the history and characteristics of the defendant and 'involve[ ] no greater deprivation of liberty than is reasonably necessary' to serve the goals of deterrence, protecting the public, and rehabilitating the defendant." *Inman*, 666 F.3d at 1004 (alteration in original) (quoting 18 U.S.C. § 3583(d)(1)–(2)). The conditions imposed must also be consistent with any applicable policy statements issued by the United States Sentencing Commission. 18 U.S.C. § 3583(d)(3).

Dotson relies on two recent opinions—*Inman*, 666 F.3d at 1001 and *Maxwell*, 483 F. App'x at 233—to support his argument that the district court's failure to adequately articulate its rationale for imposing the above-mentioned conditions constitutes plain error. Some discussion of the specifics of each case will help frame the issues presented here.

In *Inman*, the defendant pled guilty to possession of child pornography. Despite both parties' request for a 10-year term of supervised release, the district court imposed a lifetime term with a number of standard and special conditions. *Inman*, 666 F.3d at 1003. Because the district court's explanations regarding the imposition of the lifetime term and some of the attendant conditions were found to be inadequate, this court vacated and remanded for re-sentencing. For example, the defendant was prevented from consuming any alcohol; required to submit to periodic drug testing; and required to inform his probation officer of any prescription medications received during the period of supervised release, whether or not they contained controlled substances. *Id.* at 1005. Because "[n]othing in the record suggest[ed] that [the defendant] has any problem with alcohol or drug dependence," this court found further explanation to be necessary. *Id.* The court also questioned the propriety of the condition prohibiting the defendant from using any device capable of creating pictures or videos. Particularly because the defendant's conviction involved receiving child pornography over the Internet, it was unclear absent explanation why the defendant should be "effectively prohibit[ed] . . . for his lifetime" from using such devices, "even if [they] might be used appropriately in connection with employment or family activities." *Id.*

More recently, in *Maxwell*, the defendant pled guilty to one count of failing to register as a sex offender.  483 F. App'x at 235-36.  Following a term of imprisonment, the district court imposed supervised release for life with a number of highly restrictive special conditions.  *Id.*  The defendant challenged the conditions requiring that he not consume alcohol; have extended contact with minors; possess or view pornography; possess or use a device capable of creating pictures or video; and possess or use a computer or device with Internet access.  *Id.* at 237-38.  The *Maxwell* panel, guided by *Inman*, found that the defendant's "sentencing suffers from nearly identical shortcomings."  *Id.* at 239.  The extent of the district court's explanation for imposing the restrictions occurred at the beginning of the hearing, when it stated that "it intended to impose 'a substantial period of supervised release with some fairly strict conditions on it in order to protect the public from future crimes that might be committed.'"  *Id.*  This, the panel found, was an insufficient explanation for the ban on possessing or using a device that could access the Internet without the approval of the defendant's probation officer.  *Id.*  The district court found the same to be true for the restriction on pornography, as nothing suggested that it previously had "a harmful influence on [the defendant]."  *Id.*  Although observing that the special conditions regarding the prohibition on alcohol consumption and restrictions on contact with minors were "better tethered to the record evidence" because the presentence report indicated that the defendant had a history of substance abuse and his prior offense involved a minor, the court concluded that the district court failed to set forth its actual rationale on the record.  *Id.* at 240.  Because the panel declined to "formulate a post-hoc justification for [the] conditions," it vacated and remanded to the district court for reconsideration.  *Id.* at 240-41.

These cases emphasize that requiring the district court to adequately state on the record the rationale for the conditions selected aids in assuring that those chosen are applicable to that particular defendant and thus are more likely to encourage his rehabilitation.  Following this procedure provides the occasion to consider the effect of special conditions of supervised release on education, employment, and other factors that substantially impact the opportunity and capacity to reintegrate into society.  And the

imposition of conditions for rehabilitation in a manner calculated to enable a successful return to productive participation in society serves to protect the public—the other goal of probation.  We turn to review of Dotson's challenges to the conditions of his supervised release in light of this legal framework.

**1. Pornography and sexually oriented telephone numbers or computer services**

Special conditions of supervised release involving prohibitions on the use of pornographic materials have previously been upheld by this circuit.  In *United States v. Lewis*, No. 11-6445, 2012 WL 5382948, at \*5 (6th Cir. Nov. 5, 2012), the district court explained that the defendant's "possession of adult pornography could lead to the inadvertent or intentional possession of child pornography, and that the supervisory process would be simpler if issues of inadvertent possession were removed."  This court concluded that, under such circumstances, a remand for additional explanation was unnecessary.  Likewise, in *United States v. Zobel*, 696 F.3d 558, 576-77 (6th Cir. 2012), the district court's blanket prohibition on pornography use was upheld where there was evidence in the record to demonstrate that the defendant's self-professed addiction to pornography constituted an increased risk of recidivism for his crime, coercing and enticing a minor to engage in sexual activity.  Other circuits have rendered similar decisions.  In *United States v. Miller*, 665 F.3d 114, 135-36 (5th Cir. 2011), the Fifth Circuit upheld a restriction on sexually explicit material where the defendant's offense was based in part on his possession of a video in which both nude adults and children were present, indicating that his "interest in 'sexually stimulating' materials involving adults is intertwined with his sexual interest in minors"; there was evidence that his "consumption of adult pornography impinged on his daily life"; and that he "also often used paid phone sex companies."

In this case, Dotson's conviction stemmed in part from his possession of sexually explicit images of children, and it is quite likely that the district court viewed exposure to any pornographic or sexually oriented materials as placing Dotson at risk of reoffending.  *Cf. United States v. Voelker*, 489 F.3d 139, 150-51 (3d Cir. 2007) ("We

assume the court believed a lifetime ban on possessing 'sexually explicit materials' would further [the defendant's] rehabilitation and reduce the chances of recidivism."). However, the court did not explain its reasoning. There is a similar dearth of explanation in the record concerning the prohibition on sexually oriented telephone numbers or computer services. Although it is possible that the district court will provide an analysis comparable to that previously approved and impose the same restrictions, we find it necessary to remand so that "the district court [may] clarify, on the record, why it deems [these] intended special conditions appropriate." *Maxwell*, 483 F. App'x at 241.

### 2. Computer and Internet restrictions

Unlike the defendants in *Inman* and *Maxwell*, Dotson's crime involved, in part, downloading sexually explicit images of children from the Internet. Some limitations on Internet access, as well as on the use of devices that can access the Internet, is undoubtedly warranted based on the nature of the offense. Dotson also indicated that his offenses had been a result of his inability to control his urges, another reason that might weigh in favor of restricting Internet access in some capacity. Once more, however, the record does not reflect why the district court viewed the blanket 20-year ban imposed, subject only to the discretion of the probation officer, to be reasonably related to the goals of probation, Dotson's rehabilitation, and the protection of the public.

There is, again, nothing foreclosing the district court from imposing this same restriction on remand, as long as there is an adequate connection between the condition and the purposes of sentencing. In fact, the imposition of substantially similar conditions is not without precedent.[5] We pause, however, to make the undisputed observation that computers, cell phones, and Internet access play a fundamental role in

---

[5]However, there is some disagreement among the circuits as to whether such a ban, even if there is an exception for probation officer approval, is appropriate for those offenders who "possess or distribute child pornography," as opposed to "those who use the Internet to initiate or facilitate the victimization of children." *Miller*, 665 F.3d 128-29 (internal quotation marks omitted) (discussing cases); *see also United States v. Love*, 593 F.3d 1, 12 (D.C. Cir. 2010); *United States v. Sofsky*, 287 F.3d 122, 126 (2d Cir. 2002) (vacating prohibition on accessing a computer or the Internet without probation officer's approval because, although "reasonably related to the purposes of [defendant's] sentencing, in light of the nature of his offense"—receipt of over 1,000 images over the Internet—it "inflict[ed] a greater deprivation on [his] liberty than is reasonably necessary").

the modern age, a role that will undoubtedly have increased by the time Dotson is released from prison. *See Voelker*, 489 F.3d at 145 (noting that the "ubiquitous presence of the internet and the all-encompassing nature of the information it contains are too obvious to require extensive citation or discussion"); *accord United States v. Perazza-Mercado*, 553 F.3d 65, 71-74 (1st Cir. 2009) ("An undue restriction on internet use renders modern life—in which, for example, the government strongly encourages taxpayers to file their returns electronically, where more and more commerce is conducted on-line, and where vast amounts of government information are communicated via website—exceptionally difficult." (internal quotation marks omitted)). Of specific concern is the role of technology in the workplace and educational institutions. Effective rehabilitation and return to a productive role in society may well be dependent upon obtaining education that provides the skills necessary for employment. And, in 20 years, actually holding a job will in all likelihood require the usage of computers or other Internet-based technology. Dotson will be in his forties when his sentence is completed and the conditions of his supervised release should take into account the necessity that he acquire the skills to get and hold a job so that he may participate productively in society upon his release.

On remand, it may be helpful for the district court to "consider the ubiquitous nature of the internet as a medium of information, commerce, and communication as well as the availability of filtering software that could allow [Dotson's] internet activity to be monitored and/or restricted." *Voelker*, 489 F.3d at 150; *see also Sofsky*, 287 F.3d at 126-27 (observing that several less restrictive options for computer and Internet monitoring included "a more focused restriction, limited to pornography sites and images, [that] can be enforced by unannounced inspections of Sofsky's premises and examination of material stored on his hard drive or removable disks" and "check[ing] on Sofsky's Internet usage with a sting operation—surreptitiously inviting him to respond to Government placed Internet ads for pornography" (citations omitted)).[6]

---

[6]Should the district court conclude that more narrowly tailored restrictions are appropriate, it may consider imposing a more restrictive ban if Dotson fails to abide by the originally imposed conditions. *See United States v. Freeman*, 316 F.3d 386, 392 (3d Cir. 2003) (vacating condition imposing a total ban on Internet use and observing that "if [the defendant] does not abide by more limited conditions of release

Moreover, as we noted in *Inman*, because the defendant was required to register under the Sex Offender Registration and Notification Act, *see* 42 U.S.C. § 16901 *et seq.*, the district court could impose a special condition requiring him to submit "to [a] search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the person, and by any probation officer in the lawful discharge of the officer's supervision functions."   18 U.S.C. § 3583(d)(3); *see also* 18 U.S.C. § 3563(b)(23).  "On remand the district court may wish to consider whether the search provision is sufficient to alleviate any concerns" about Dotson's computer use, Internet access, or use of any electronic equipment capable of accessing the Internet.[7]  *Inman*, 666 F.3d at 1005-06.

### 3.  Drug testing and treatment

The district court imposed several conditions related to drug use and testing. First, it imposed the statutorily mandated condition of supervised release requiring the defendant to "refrain from any unlawful use of a controlled substance" and to "submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court."[8]  Second, it imposed the standard condition of supervision requiring that Dotson "refrain from excessive use of alcohol," providing that he "shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician," and requiring him to "submit to periodic urinalysis test as directed by the probation officer to determine the use of any controlled substance."

---

permitting benign internet use, it might be appropriate to ban all use").

[7]Although the district court stated during the sentencing hearing that Dotson was required "to comply with all sex offender registry requirements," the box on the judgment providing for this condition was not checked.  It is clear, however, that Dotson qualifies as a sex offender under the Act and must therefore register.  *See* 42 U.S.C. § 16911(1) & (5)(A)(ii); *see also* 42 U.S.C. § 16913(a).

[8]Of course, this condition "may be ameliorated or suspended by the court as provided in section 3563(a)(4)."  18 U.S.C. § 3583(d).  This cross-reference, which actually refers to 18 U.S.C. § 3563(a)(5) and deals with conditions of probation, provides that these requirements "may be ameliorated or suspended by the court for any individual defendant if the defendant's presentence report or other reliable sentencing information indicates a low risk of future substance abuse by the defendant."

Third, it imposed an additional condition of supervised release requiring Dotson to "submit to drug testing and drug treatment programs as directed by the Probation Officer."[9]

It appears from Dotson's statement that he previously sold drugs in order to "get by." The government argues that this fact, along with the nature of the offense, establishes that "it is in the public's interest that [Dotson] be monitored and tested for possible substance abuse." However, this generalized logic misses the mark. There is simply nothing in the record indicating whether Dotson has previously abused drugs and would be at risk for future abuse. Under such circumstances, we have remanded to the district court so that it could "explain why these conditions of supervised release are warranted." *Inman*, 666 F.3d at 1005. Granted, the defendant in *Inman* was faced with more restrictive conditions involving both alcohol use, prescription drug use, and testing.[10] However, because the defendant in *Inman* "appear[ed] to present a low risk" for substance abuse, we required more than conjecture to uphold the condition. *Id.* Moreover, in *Maxwell*, even though the district court's prohibition on alcohol consumption seemed "reasonably related to his rehabilitation" in light of the defendant's history of substance abuse, we found this insufficient "to cure the problem identified in *Inman*—the absence of any statement that sets forth the district court's actual rationale." *Maxwell*, 483 F. App'x at 240. Though imposition of these same restrictions also may

---

[9]The government briefly argues that Dotson's challenge is not ripe for review. We disagree. We are not presented with a situation, such as that in *United States v. Lee*, 502 F.3d 447, 450 (6th Cir. 2007), where there is "no guarantee" that the condition will ever be applicable. There, for example, the condition in question required the defendant to "participate in a specialized sex offender treatment program that *may include* the use of a plethysmograph or polygraph." *Id.* at 448 (emphasis added). The court found the indefinite nature of whether the plethysmograph would be required or even be in existence after defendant was released from prison to foreclose review at that early juncture. *Id.* at 450-51. In contrast, we find the definite nature of the drug-related conditions to be ripe for our consideration. Although Dotson's probation officer will have some leeway in deciding what drug testing and treatment he participates in, he will, at some point, be required to submit to urinalysis testing and, more importantly, the additional term of supervised release states that he "*shall submit* to drug testing and drug treatment programs." (Emphasis added).

[10]In *Inman*, the statutory mandatory condition requiring testing after release from prison and periodic testing as directed by the court was imposed, as were special conditions prohibiting the consumption of any alcoholic beverages and requiring the defendant to inform his probation officer of each prescription medication in his possession, regardless of whether it contained controlled substances. *Id.* at 1004-05.

be found appropriate, we remand for clarification on the record of the basis for any conditions selected.

### III.  CONCLUSION

Although we hold that the district court did not abuse its discretion in admitting a redacted version of Dotson's statement at trial, we determine that, as in *Inman* and *Maxwell*, a remand is necessary so the district court can reconsider several of the conditions imposed on Dotson's supervised release.  The error here—failure to articulate the reasons for imposing the conditions of supervised release at issue—is plain.  *See, e.g.*, *Inman*, 666 F.3d at 1006 (observing that "[a] sentence that is not adequately explained is procedurally erroneous").  We find that the error affected Dotson's substantial rights because the district court might have imposed less restrictive conditions had it fully considered and explained its basis for doing so on the record.  *See id.*  The error affected the fairness, integrity, or public reputation of the proceedings because the conditions are potentially more severe than those that would have been imposed had the district court followed the procedure required by our precedent.  *See id.* at 1006-07.  We therefore VACATE the judgment with respect to the special conditions of supervised release and REMAND for further proceedings consistent with this opinion.