**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0303n.06

**No. 18-4118**

<table>
<tr><td>UNITED STATES COURT OF APPEALS<br>FOR THE SIXTH CIRCUIT</td><td><div style="border:1px solid black">**FILED**<br>May 28, 2020<br>DEBORAH S. HUNT, Clerk</div></td></tr>
</table>

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE |
| | ) | NORTHERN DISTRICT OF |
| JUSTIN KRUEGER, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

**BEFORE:** ROGERS, STRANCH, and THAPAR, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Justin Krueger challenges his sentence to time served and three years of supervised release with a special condition. He argues that the district court erred by (1) finding him incompetent to stand trial in 2015; (2) imposing a procedurally and substantively unreasonable sentence; (3) imposing any term of supervised release; and (4) requiring Krueger to take mental health medications as a condition of supervised release. Because the first challenge is moot and Krueger's sentence—including the time period of supervised release—was procedurally and substantively reasonable, we **AFFIRM** Krueger's conviction and the duration of his sentence. But because the district court did not make a contemporaneous medically-informed finding as to the necessity of the "mental health medications" condition or whether that condition was reasonably related and properly tailored to a § 3583(d) sentencing goal, we **VACATE** the special condition of supervised release and **REMAND** the case for further proceedings consistent with this opinion.

## I. BACKGROUND

In late 2013, Krueger was indicted on two counts of transmitting threatening communications in interstate commerce in violation of 18 U.S.C. § 875(c) to his adoptive parents; one on Facebook, the other by voicemail. The record documents that Krueger lived through difficult circumstances as a child and adolescent; that he suffered from mental illness and displayed severe behavioral problems from a very young age; and that lasting antagonism developed between Krueger and his adoptive parents. As a boy he was placed on numerous medication trials involving psychotropic medications, and his behavioral problems persisted. The threats in the indictment were two among many Krueger made to his adoptive parents when he was in his early twenties and they occurred after his adoptive parents refused to allow Krueger to see his biological brother, who remained in their care. The record shows that Krueger's threats contemplated killing his adoptive parents and included animated depictions of grotesque violence, some of which involved rape, bodily mutilation, kidnapping, and humiliation. But as the district court noted, Krueger was "more of a talker than a doer" and there was no indication in the record that Krueger physically harmed his adoptive parents or took steps to actualize his threats.

Krueger pled guilty to the indictment. The district court sentenced him to 36 months in prison and three years of supervised release on each count to run concurrently, having departed upward on the basis of "Extreme Psychological Injury" (USSG § 5K2.3) and "Extreme Conduct" (USSG § 5K2.8) and then varied from an adjusted total offense level 14 to level 18. In 2015, we vacated the judgment and remanded the case because an intervening Supreme Court decision, *Elonis v. United States*, 135 S. Ct. 2001 (2015), held that "negligence is not sufficient to support a conviction under" 18 U.S.C. § 875(c). *United States v. Krueger*, Order, 6th Cir. No. 14-3820 (6th Cir. July 6, 2015). Krueger successfully requested to have his appointed counsel replaced, but he

then submitted a concerning pro se trial brief (ostensibly with standby counsel) that led the Government to file a motion for a mental exam for competency and insanity defense purposes.

The motion was granted, and over the ensuing months two doctors determined that Krueger suffered from Delusional Disorder and was unable to assist in his defense. Extensive competency hearings were held in which the doctors and Krueger testified. The district court found Krueger incompetent to stand trial and he was committed.

In June 2018, a forensic psychologist at the Federal Medical Center in Butner, North Carolina, where Krueger was committed, found Krueger competent to stand trial contingent on his compliance with psychotropic medication. The district court held another hearing to assess competency, at which Krueger told the court that he was no longer taking his psychotropic medication. The court noted on the record that Krueger appeared to be doing unusually well, and then engaged in an extensive inquiry into specific psychotropic medications, the timeline of medication suspension, and Krueger's improvement. Because the competency report from Butner was contingent on compliance with medical direction and Krueger "clearly ha[d]n't taken [medication] for a long period of time," the Government asked the court to perform a competency evaluation on the record.

The court obliged and found Krueger competent. At the same hearing, Krueger again pled guilty to the indictment and the court accepted his plea. At a later sentencing hearing, the district court incorporated the Guideline calculation from the prior sentencing, and sentenced Krueger to time served and three years of supervised release with the condition that he take all prescribed mental health medications. In March 2019, a Supervision Modification Request report stated that Krueger's counselor "felt at that time, only individual sessions once a month is necessary and psychiatric medication is not needed."

## II. ANALYSIS

### A. Standard of Review

We review a criminal sentence for both procedural and substantive reasonableness. *United States v. Morgan*, 687 F.3d 688, 693 (6th Cir. 2012) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). A criminal sentence is procedurally reasonable where "the trial court follows proper procedures and gives adequate consideration to [the § 3553(a)] factors." *Holguin-Hernandez*, 140 S. Ct. at 766; *see also United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). The substantive reasonableness of a sentence is a separate inquiry: even if the district court followed proper procedures and adequately considered the appropriate factors, we ask whether the district court nevertheless imposed a sentence that is "greater than necessary." *Holguin-Hernandez*, 140 S. Ct. at 766-67. The substantive review asks whether reasonable weight was given to each sentencing factor, where within the constellation of similar cases the sentencing outcome in the present case falls, and whether its placement there is justified. *United States v. Boucher*, 937 F.3d 702, 707-09 (6th Cir. 2019). We review justiciability determinations de novo. *Sullivan v. Benningfield*, 920 F.3d 401, 407 (6th Cir. 2019).

The imposition of a special condition of supervised release is reviewed for abuse of discretion. *United States v. Modena*, 302 F.3d 626, 636 (6th Cir. 2002). First, we must "determine whether the district court adequately stated in open court at the time of sentencing 'its rationale for mandating special conditions of supervised release.'" *United States v. Brogdon,* 503 F.3d 555, 563 (6th Cir. 2007) (quoting *United States v. Carter,* 463 F.3d 526, 529 (6th Cir. 2006)). Second, the special conditions must be "reasonably related to the dual goals of probation, the rehabilitation of the defendant and the protection of the public." *United States v. Dotson*, 715 F.3d 576, 584 (6th Cir. 2013) (relying on *Brogdon*, 503 F.3d at 563). They must "reasonably relate to the nature of

the offense and the history and characteristics of the defendant and 'involve[ ] no greater deprivation of liberty than is reasonably necessary' to serve the goals of deterrence, protecting the public, and rehabilitating the defendant." *United States v. Inman*, 666 F.3d 1001, 1004 (6th Cir. 2012) (alteration in original) (quoting 18 U.S.C. § 3583(d)(1)-(2)). These two steps are often billed as procedural and substantive inquiries, respectively. If both are satisfied, the condition of supervised release must be upheld.

**B. Discussion**

1. Challenge to Competency Finding

Krueger contends that the district court erred by finding him incompetent to stand trial in 2017, which remains the cause of his ongoing sentence. To be competent, a defendant must have "sufficient ability to consult with his lawyers and a reasonable degree of rational and factual understanding of the proceedings against him." *United States v. Ford*, 184 F.3d 566, 580 (6th Cir. 1999). Krueger argues that he has always met this test, as he was competent to stand trial in 2014, and that his 2016 filing with the court was an insufficient basis to raise competency concerns. The Government argues that Krueger's challenge to the earlier incompetency finding is moot.

After he was found competent, Krueger pled guilty to the indictment and his case was adjudicated to a final judgment, and undoing the earlier incompetency finding would have no bearing on his current set of grievances. *See United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1540-42 (2018). Krueger also asserts that his injuries are capable of repetition in the future, but we are unwilling to assume that Krueger will again engage in conduct that will place him at risk of being found incompetent to stand trial. *Id.* His claim is moot and the possibility that he might one day be found incompetent to stand trial in a different criminal case is insufficient to render his present challenge justiciable. *Demis v. Sniezek*, 558 F.3d 508, 512, 516 (6th Cir. 2009).

2.  Procedural and Substantive Reasonableness

Krueger argues that his sentence was procedurally and substantively unreasonable because the district court departed under § 5K2.3 and § 5K2.8, improperly based his prison sentence on his need for medical treatment, and failed to take into account the mitigating circumstances in his case.

We begin with the departures. An upward departure is permitted under § 5K2.3 if the psychological injury was "much more serious than that normally resulting from commission of the offense." USSG § 5K2.3. This departure is warranted where "there is a substantial impairment of the intellectual, psychological, emotional, or behavioral functioning of a victim, when the impairment is likely to be of an extended or continuous duration, and when the impairment manifests itself by physical or psychological symptoms or by changes in behavior patterns." *Id.* A departure under § 5K2.8 is reserved for cases where "the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim." USSG § 5K2.8. "Examples of extreme conduct include torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation." *Id.* After considering extensive victim testimony and evidence, learning that the threats charged in the indictment were two among scores of phones calls threatening extreme sexual violence and death, and that Krueger's adoptive parents significantly altered their lives in response to such threats (by, for example, installing surveillance equipment and going into "lockdown" whenever Krueger was in the area), the district court reasoned that both departures were appropriate.

While our caselaw on § 5K2.3 is limited, and threats charged under 18 U.S.C. § 875(c) generally impose some amount of psychological harm, the district court did not abuse its discretion by finding an extreme psychological injury here, where it credited testimony that the lives of Krueger's adoptive parents were totally disrupted by his repeated threats. *See United States v. Bowker*, 372 F.3d 365, 390-92 (6th Cir. 2004), *vacated by* 543 U.S. 1182 (2005), in light of *United*

*States v. Booker*, 543 U.S. 220 (2005); *United States v. Bohanon*, 290 F.3d 869, 876 (7th Cir. 2002) (upholding § 5K2.3 departure where defendant's prolonged campaign of sending violent and threatening letters to a family instilled "fear, humiliation, and embarrassment").

It is a closer case as to the extreme conduct provisions of § 5K2.8 because the fact that Krueger apparently took no physical steps to carry out his threats works in his favor. Though there is little precedent on this provision, courts have applied § 5K2.8 to similarly violent and protracted harassment campaigns. *See United States v. Massey*, 349 F. App'x 64, 67 (6th Cir. 2009); *see also Bohanon*, 290 F.3d at 876 (upholding § 5K2.8 departure despite no physical injuries to victims where threats resulted in severe humiliation); *United States v. Morrison*, 153 F.3d 34, 53-55 (2d Cir. 1998) (upholding both § 5K2.3 and § 5K2.8 departures where protracted campaign of death and mutilation threats was "particularly cruel and heinous"). The district court did not abuse its discretion by applying a § 5K2.8 departure in this case.

Krueger's next challenge is that his prison sentence was improperly based on his need for medical treatment. In *Tapia v. United States*, the Supreme Court held that sentencing courts are precluded from "imposing or lengthening a prison term to promote an offender's rehabilitation." 564 U.S. 319, 332 (2011). Krueger and the Government agree that the district court impermissibly tied Krueger's need for residential drug treatment to the initial prison sentence it imposed. Krueger argues that by "incorporat[ing] everything that's happened up until this point" at the second sentencing, and failing to disavow its prior *Tapia* error, his current sentence is based on an impermissible factor. The Government contends that *Tapia* error cannot affect a sentence to time-served and that any residual error was harmless. An error may be considered harmless "where the government is able to prove that none of the defendant's substantial rights have been affected by

the error." *United States v. Oliver*, 397 F.3d 369, 381 (6th Cir. 2005) (citing Fed. R. Crim. P. 52(a)).

We agree that to the extent the district court's *Tapia* error was renewed at the second sentencing, such error was harmless. The possibility that Krueger would receive residential drug treatment in prison could not have provided a basis for his sentence to time served. While the district court imported wholesale the sentence and its rationale from the first sentencing, because the sentence that Krueger challenges did not involve prospective incarceration, any reincorporated *Tapia* error was harmless.

Finally, Krueger argues that the sentence imposed was substantively unreasonable because the district court did not properly weigh the mitigating circumstances. "[I]n gauging the substantive reasonableness of a sentence, we ask whether the sentencing court gave reasonable *weight* to each relevant factor. If 'the court placed too much weight on some of the § 3553(a) factors and too little on others,' the sentence is substantively unreasonable regardless of whether the court checked every procedural box before imposing sentence." *Boucher*, 937 F.3d at 707 (quoting *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019) (emphasis in original).

Here, the district court extensively considered Krueger's life history, including, among other occurrences, his early childhood trauma, ongoing mental health problems, and experience at violent or abusive boarding schools. The district court also noted that Krueger's threats were apparently motivated by not being allowed to see his younger brother. Krueger's challenge boils down to a disagreement with the district court's decision to credit his adoptive parent's testimony (and discount Krueger's), and with the weight the court afforded to the mitigating circumstances as compared to the aggravating factors in the record. But the district court carefully considered

Krueger's background, gave it particularized attention, and weighed the factual circumstances that removed Krueger's case from the heartland of 18 U.S.C. § 875(c) cases. *See Boucher*, 937 F.3d at 708-09; *Kimbrough v. United States*, 552 U.S. 85, 109 (2007). It is well within the province of the district court to credit the testimony of one witness over that of another and to evaluate the evidence. The district court did not commit reversible error when weighing the Section 3553(a) factors.

3. Supervised Release

Krueger contends that any term of supervised release was a greater deprivation of liberty than reasonably necessary because he had been in custody for 58-and-a-half months at the time of the second sentencing. He asserts that the statute under which he was convicted provides for discretionary supervised release only, and rightly asserts that the imposition of supervised release must be reasonably related to the sentencing factors, the same § 3353(a) considerations that govern prison sentences (except for § 3553(a)(2)(A)). But unlike prison sentences, rehabilitation interests may enter the equation and "in deciding whether to impose probation or supervised release, [courts may] consider whether an offender could benefit from training and treatment programs." *Tapia*, 564 U.S. at 330; *see also United States v. Johnson*, 529 U.S. 53, 59 (2000). While we are mindful that the competency litigation in this case prolonged the period of Krueger's confinement, the district court adequately explained the need for ongoing supervised release. There is every reason to believe on this record that continued supervision is reasonably necessary to Krueger's successful transition back to the community and to monitor his indisputably complicated medical needs.

4. Psychotropic Medication as a Condition of Supervised Release

As a preliminary matter, we must address the Government's contention that Krueger waived his challenge to the involuntary medication order. Two days before sentencing, Krueger

submitted a written sentencing allocution in which he declared, "I hereby preserve an objection to [the] condition . . . that I be subjected to medicinal treatment i.e. forced medication." At the sentencing hearing, Krueger's counsel said that he would follow court orders and explained "I know that there's some question about that in the allocution, but Mr. Krueger has indicated to me that if the Court orders him to take and accept mental health treatment, and the decision of the mental health treater is that he should take medicine, that he will do that." The Government interprets this statement to be an express abandonment of the objection made in the allocution, reasoning that Krueger had the affirmative duty to interject and save the objection, and because he failed to correct the inaccuracy, he waived any challenge to the court's order.

"[W]aiver is the intentional relinquishment or abandonment of a known right." *United States v. Sheppard*, 149 F.3d 458, 461 n.3 (6th Cir. 1998). Once a defendant has waived an objection, it may not be later challenged or resurrected on appeal. *United States v. Denkins*, 367 F.3d 537, 543-44 (6th Cir. 2004). In this case, though Krueger's counsel assured the court that Krueger would prospectively obey any conditions of supervised release, including a requirement that he take medication, counsel did not intentionally relinquish Krueger's right to challenge the terms of that sentence, including an involuntary medication order. Krueger's allocution, written two days prior to sentencing, indicated that Krueger intended to challenge any medication requirement within his sentence. In addition, when his lawyer concluded his statement, Krueger asked to read into the record his allocution (or have the court file it)—an affirmative step that may fairly be understood as an effort to ensure that his objection to mandatory medication was properly lodged. On this record, it does not appear that Krueger's objection to an involuntary medication order was intentionally abandoned.

Turning to the merits, we examine whether the district court's explanation for requiring Krueger to take prescribed psychiatric medication was adequate and whether the condition itself was reasonably related to—and properly tailored to—a § 3583(d) sentencing goal. Defendants have "a constitutionally protected liberty 'interest in avoiding involuntary administration of antipsychotic drugs'—an interest that only an 'essential' or 'overriding' [government] interest might overcome." *Sell v. United States*, 539 U.S. 166, 178-79 (2003) (quoting *Riggins v. Nevada*, 504 U.S. 127, 134-35 (1992); *see also Washington v. Harper,* 494 U.S. 210, 221-22, (1990); *United States v. Grigsby*, 712 F.3d 964, 968-69 (6th Cir. 2013). This principle applies equally to cases concerning whether a defendant may be medicated in order to become competent to stand trial and those pertaining to psychotropic medication as a condition of supervised release. *See United States v. Williams*, 356 F.3d 1045, 1055-57 (9th Cir. 2004); *see also United States v. Malone*, 937 F.3d 1325, 1329 (10th Cir. 2019). The heightened nature of the liberty interest involved mandates an overriding, particularized, and medically-grounded explanation for its deprivation. *See Riggins*, 504 U.S. at 135 ("[F]orcing antipsychotic drugs on a convicted prisoner is impermissible absent a finding of overriding justification and a determination of medical appropriateness.") And, like all conditions of supervised release, involuntary medication orders must be reasonably necessary to one of the specified sentencing goals enumerated in § 3583(d).

The Government first contends that Krueger challenges only the substantive reasonableness of this condition of supervised release, not the procedural adequacy of its implementation. Not so. In his opening brief, Krueger contended that the involuntary administration of antipsychotic drugs triggers a constitutionally protected liberty interest that requires a correspondingly thorough inquiry before deprivation. He invoked Supreme Court precedent and cited the Ninth Circuit's rule that district courts must provide "on-the-record,

medically-grounded findings that court-ordered medication is necessary to accomplish one or more of the factors listed in § 3583(d)(1)" and must make an "explicit, specific finding under 18 U.S.C. § 3583(d)(2)." *Williams*, 356 F.3d at 1055-57. The procedural point was raised.

A condition of supervised release is valid, as a procedural matter, if the district court (1) adequately explained its rationale for imposing the condition, and (2) it does so in open court at the time of sentencing. *Brogdon*, 503 F.3d at 563. Krueger's first sentence did not include an analogous involuntary medication condition—and predated the competency concern. At the second sentencing hearing, which imposed the involuntary medication order, the district court stated, "[m]ental health treatment, we will get the standard language for that, also and we'll order an expedited mental health assessment. . . . And Mr. Krueger must take all mental health medications that are prescribed by the treating physician." That was the extent of the district court's statement on the record about the involuntary medication order. The district court imposed the condition of supervised release in open court, but it was not accompanied by a rationale. *See Brogdon*, 503 F.3d at 563. Nor did the court address how the involuntary medication order was necessary to a § 3583(d)(1) factor. *See Dotson*, 715 F.3d at 584. And the district court did not consider whether the condition was sufficiently tailored to Krueger's circumstances and involved no greater deprivation of liberty than necessary. *See Inman*, 666 F.3d at 1004.

To the extent that we might turn to the record for our own explanation, *see United States v. Doyle*, 711 F.3d 729, 734 (6th Cir. 2013), a medically-informed rationale is not sufficiently clear to justify depriving Krueger of his liberty interest in avoiding involuntary administration of medication without further explanation from the district court. Krueger was found competent when he was not on medication and the district court noted his marked improvement at that time. Given Krueger's history with mental illness and the district court's prolonged engagement with

that history, that the court found him competent while not on psychotropic medication weighs in Krueger's favor. The fact that Krueger had a history of mental illness and taking medication, and that his prior competency recommendation was contingent on psychotropic medication do not on their own tether the involuntary medication order to any § 3583(d)(1) factor. The medical testimony in the record relates to competency, but not necessarily to the governmental and public interests implicated by supervised release.

At sentencing, Krueger was entitled to an explanation of those interests and why the involuntary medication order was necessary to effectuate them. *Brogdon*, 503 F.3d at 563; *see also United States v. Cope*, 527 F.3d 944 (9th Cir. 2008). Because the district court did not provide an explanation as to why it included an involuntary medication order, we cannot discern whether the condition at the time of sentencing was reasonably related to Krueger's history and characteristics, deterring crime and protecting the public, or meeting Krueger's medical needs, § 3583(d)(1), and, separately, whether it involved a greater deprivation of liberty than necessary, § 3583(d)(2). We therefore vacate this condition of supervised release and remand the case for the district court to provide an adequate, medically-informed, rationale.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** Krueger's conviction and sentence save the involuntary medication requirement. We **VACATE** the special condition of supervised release requiring Krueger to take mental health medications and **REMAND** the case to the district court for further proceedings consistent with this opinion.